(Nos. 45896, 45901 cons.—

THE CITY OF MONMOUTH, Appellee and Appellant, v. THE POLLUTION CONTROL BOARD *et al.*—(Environmental Protection Agency, Appellant and Appellee.)

*Opinion filed May 29, 1974.*

William J. Scott, Attorney General, of Springfield (Larry R. Eaton, Assistant Attorney General, and Prescott E. Bloom, Special Assistant Attorney General, of counsel), for the Environmental Protection Agency.

Bufford W. Hottle, Jr., of Monmouth, and Kenneth R. Shorts, of Waukegan, for City of Monmouth.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The City of Monmouth (hereafter City) petitioned the appellate court (Ill. Rev. Stat. 1971, ch. 111½, par. 1041; ch. 110, par. 264 *et seq.*) to review an order of the Pollution Control Board (hereafter the Board) in which it found that the City had violated section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a)) and ordered it to take the actions hereafter discussed and to pay a fine. The appellate court (10 Ill. App. 3d 823) vacated the order and remanded the

cause to the Board for further proceedings. The Environmental Protection Agency and the Board, jointly, and the City, filed petitions for leave to appeal as a matter of right or in the alternative for leave to appeal, and we allowed both petitions for leave to appeal.

The Environmental Protection Agency commenced these proceedings by filing with the Board a complaint in which it alleged that the City was permitting a sewerage lagoon which it owned and operated to emit obnoxious odors into the environment causing air pollution in violation of section 9(a) of the Act. It asked the Board to enter a cease-and-desist order, to direct the City to physically cover the first stage of its three-stage lagoon, to obtain another source of water with a lower sulphate content or take any other measures necessary to terminate the odor, and to assess a penalty of $10,000 for each violation and $1,000 for each day the violation continued. Following a hearing the Board entered an order finding the City in violation of section 9(a), imposed a $2,000 fine, ordered the City to submit to the Environmental Protection Agency complete plans, specifications and a schedule detailing a program for covering the lagoon and incinerating the hydrogen sulfide which caused the odors, to file monthly progress reports with the Environmental Protection Agency and the Board, and "to cease and desist from causing air pollution due to the uncontrolled emission of hydrogen sulfide odors within six months from date." The City filed its plans, specifications and timetable with the Environmental Protection Agency as ordered by the Board, and also filed a petition for review in the appellate court.

The City contends first that the power conferred upon the Board to impose fines (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(b) and 1042) is invalid in that it is an unconstitutional delegation of judicial power. In *City of Waukegan v. Pollution Control Board,* 57 Ill.2d 170, we considered and decided adversely to the City the conten-

tions and arguments presented in this case and they need not now be further discussed.

The City contends next that because a fine was imposed the action before the Board was a criminal proceeding. It argues that the complaint upon which a criminal proceeding is instituted must be verified (Ill. Rev. Stat. 1971, ch. 38, par. 107—9) and the unverified complaint filed with the Board is, therefore, insufficient; that it was denied the right of trial by jury guaranteed by section 13 of article I of the Illinois Constitution and as provided for in section 115—4 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 115—4), and that the evidence does not, as required by section 3—1 of the Criminal Code, prove beyond a reasonable doubt that it is guilty of the offense charged in the complaint. Our opinion in *Waukegan* makes it plain that the fines authorized by sections 33(b) and 42 of the Act were not designed to be, nor are they, criminal sanctions. The constitutional guarantee that "the right to trial by jury as heretofore enjoyed shall remain inviolate" (Ill. Const. (1970), art. I, sec. 13) has been consistently interpreted by this court as inapplicable to special or statutory proceedings unknown to the common law. See *People ex rel. Keith v. Keith,* 38 Ill.2d 405.

The City contends next that the order of the Board cannot be sustained because it is contrary to the decisions of this court holding that persons living in industrial communities must suffer without remedy any uncomfortable odors which are ordinarily and necessarily prevalent there. (See *Gardner v. International Shoe Co.,* 386 Ill. 418, and cases cited therein.) In the Environmental Protection Act, the General Assembly has provided remedies to prevent or lessen air pollution which are in addition to those remedies recognized by the common law (see Ill. Rev. Stat. 1971, ch. 111½, par. 1045), and this it may do. *City of Aurora v. Burns,* 319 Ill. 84.

The City contends next that section 9 of the

Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1009) is unconstitutional for the reasons that it does not contain sufficient standards for determining what constitutes air pollution and that the Board has not adopted regulations and standards as contemplated by that section. Section 9 provides: "No person shall: (a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act." It is apparent that under section 9(a) a complaint may be based on the violation of either the express statutory provision or the "regulations or standards adopted by the Board ***." The complaint charged a violation of the express provision of the statute and not of a standard or regulation adopted by the Board and we need not, therefore, further consider the contention concerning the Board's failure to adopt regulations and standards. As to the City's contention that the statute is invalid by reason of its failure to contain adequate standards, a "contaminant" as defined in section 3(d) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(d)) includes "any odor"; "air pollution" is defined in section 3(b) (ch. 111½, par. 1003(b)) as "the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property," and section 33(c) of the Act (ch. 111½, par. 1033(c)) provides:

"(c) In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

We hold that section 9(a), when read in conjunction with sections 3(b), 3(d) and 33(c), contains sufficient standards.

The City contends next that the finding of the Board that it was in violation of section 9(a) is against the manifest weight of the evidence. The record, which contains a stipulation of facts and the transcript of two days of testimony, shows that in the early 1960's, in an effort to bring industry to the area, the City agreed to provide water and sewerage facilities for a meat-packing plant to be built in the City. With funds derived partly from general-obligation and partly from revenue bonds, the City constructed a sewage-treatment system, a water well, a water tower, and installed necessary pumping equipment. The sewage-treatment facility was constructed in 1965 in accordance with a permit issued by the State Sanitary Water Board. This facility serves only the packing company, other residents of the City being served by another treatment facility. It is a three-cell waste-stabilization system and was designed as a water-pollution-control treatment facility to treat the waste from a hog-kill and packing-plant operation estimated at 3,000 hogs per day. The system is of a type commonly used in the meat-packing industry. The first cell of the three-stage lagoon system is 275 feet square and 15 feet deep, while the second and third cells are approximately 48 acres each and 5 feet deep. The total volume of water in the three cells is 117,000,000 gallons and from the third cell the water is discharged into a creek.

The packing company began operating in April, 1966, and within 4 months the City was advised by the Sanitary

Water Board that residents of the community had complained about odors. The record reflects that the City co-operated with the Water Board in attempting to correct the condition, that the Water Board's engineers conducted periodic inspections of the lagoons and that the City filed periodic reports with the Sanitary Water Board. In May, 1968, the City obtained a permit from the Sanitary Water Board to install recirculation facilities, and in 1970 a second type of recirculation operation was installed, but neither eliminated the odor problem. Efforts were made to eliminate the odors by the introduction of enzymes into the wastes both at the packing plant and in the first-stage lagoon. Aerators were installed, but none of these efforts removed the causes of the hydrogen sulfide gas which was creating the offensive odor. At the suggestion of the Board the City attempted to create a "grease cover" over the first lagoon, but this proved unsuccessful. The Environmental Protection Agency, approximately one year before the complaint was filed, suggested "a permanent artificial cover," but the testimony shows that at that time the technological requirements for the erection of such a cover were unknown to the engineers for both the Agency and the City.

The Board in its opinion summarized the testimony of each of the Environmental Protection Agency's 10 witnesses, 3 of whom were employed by the Agency. Their testimony, which was not disputed by the City, is that the sewage-lagoon system was producing offensive odors and discolored the paint on nearby houses. The Board found that the hydrogen sulfide being discharged from the lagoon system constituted air pollution within the meaning of section 9(a) of the Environmental Protection Act.

The allocation of the burden of proof is, of course, material to the issue of whether the finding of the Board is contrary to the manifest weight of the evidence, and section 31(c) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c)) provides: "In hearings before the Board under this Title the burden shall be on the Agency or other

complainant to show either that the respondent has caused or threatened to cause air or water pollution or that the respondent has violated or threatens to violate any provision of this Act or any rule or regulation of the Board. If such proof has been made, the burden shall be on the respondent to show that compliance with the Board's regulation would impose an arbitrary or unreasonable hardship." The City's evidence does not dispute the existence of the odors. It is plain that air pollution, as defined in the statute, was shown to exist, and the evidence supports the finding that the City was in violation of section 9(a).

We consider next the City's contention that the Board erred in entering the order to cease and desist. One of the briefs filed in this court on behalf of the Environmental Protection Agency and the Board states that the City has covered the offending lagoon and "that the trapped $H_2S$ gas is incinerated, that there is no $SO_2$ problem, that there are no complaints about $SO_2$, that the once-complaining citizens are satisfied, that the EPA is satisfied, and that so far as one can tell the Board is satisfied." In view of the representations that the offensive odors have been eliminated, the appeal from this portion of the Board's order appears to be moot and we need not further consider it.

The City contends next that the Board erred in imposing the fine. The record shows that the City had cooperated with the Environmental Protection Agency and its predecessor the Sanitary Water Board and that the failure to eliminate the odors was the result of the absence of an effective technological method for so doing. The witnesses were in agreement that the anaerobic digestion process in the first cell of the lagoon resulted in the generation of methane and hydrogen sulfide gases which created the offensive odors. There was no known process for effectively controlling the gas and the testimony reflects that trial-and-error methods over a five-year period failed to do so. Various covers were suggested for the first-stage lagoon and the city officials became aware of

and inspected a large anaerobic lagoon which had been covered with a vinyl material, and the testimony shows that this was the first such cover known to the parties. The mayor testified that at the time of the hearing the engineering was underway to cover the City's lagoon with a nylon-reinforced polyurethane cover and install equipment to burn the gas, and the briefs indicate that the offensive odors have been eliminated.

In its order the Board found that "Through the years the City has worked cooperatively with the Sanitary Water Board in attempting to abate the odor problem," and "The history of this problem has not been characterized by inaction but the City and the packing company have simply not done enough." Neither the record nor the briefs suggests what more the City might have done.

The provisions of the Act make it plain that the General Assembly intended that the Board be possessed of expertise (ch. 111½, par. 1005(a)) and that it be vested with broad discretionary powers in making its orders and determinations (par. 1033(c)) and in the imposition of civil penalties (par. 1042). It is equally plain that its orders and determinations are subject to judicial review (par. 1041), and in order to be sustained must find support in the record.

The legislative declaration of the purpose of the Act (par. 1002) indicates that the principal reason for authorizing the imposition of civil penalties (par. 1042) was to provide a method to aid the enforcement of the Act and that the punitive considerations were secondary. On this record, which shows beyond question that neither the Agency nor its predecessor, the Sanitary Water Board, was able to suggest an effective means of eliminating the odors, that the City, at substantial expense, co-operated in the implementation of every proposal, and that through the City's efforts the problem appears to have been solved, we hold that the Board erred in imposing the fine.

The City's final contention relates to actions of the

Environmental Protection Agency subsequent to the entry of the Board's order. As noted previously, during the pendency of the City's appeal from the Board's order it filed its plans and specifications with the Environmental Protection Agency. A supplemental record filed by order of the appellate court shows that the Agency, in authorizing the City to install the waste-gas-collection and incineration system which eliminated the odors imposed "special conditions" relating to matters not involved in the hearing before the Board. The City argues that these additional requirements imposed by the Agency were in no way related to the odor problem which gave rise to the complaint and that the imposition of the "special conditions" is beyond the scope of the Board's order, and improper. The record contains nothing which indicates the basis or reason for the imposition of the "special conditions," and we conclude that the cause should be remanded to the Board to consider whether the action of the Agency exceeds the scope of its order.

Because we remand this cause to the Board it is necessary to consider the contentions of the Board and the Agency concerning the appellate court's holding that a finding made by the Board was unsupported by any evidence. In its finding regarding the technical problems presented in controlling the noxious odors the Board said: "In a variance request by Texaco, Inc. in Salem, Illinois we considered a situation in which 3,000 pounds per day of $H_2S$ was being emitted into the atmosphere. Control down to 6.5 pounds per day was effected by a system which oxidized the $H_2S$ to elemental sulfur by exposure to dissolved air in the presence of a nickel chloride catalyst (PCB 71—235, October 14, 1971; See also PCB 70—29, February 17, 1971)." The appellate court held that the finding was "wholly unsupported by any evidence presented."

The Agency and the Board argue that in the statement the Board referred to its previously published opinion and not to a record, that the reference was an appropriate

application of the doctrine of *stare decisis* and a proper exercise of its expertise. The City contends that the "finding" based on the reference to the Texaco case is a finding of fact that the same method which was employed in the Texaco case to eliminate the problem there was technologically practicable in this case, that there is no evidence in this record to support the finding, and that the finding, based on matters extraneous to this record, must be set aside.

There are, of course, many quasi-judicial decisions of administrative agencies which are properly cited as precedents for its later decisions. A distinction, however, must be drawn between that type of decision and this situation in which evidence in another proceeding and which does not relate to, nor find support in, the evidence in the present proceeding is a factor in this decision. There was no evidence in this record that the $H_2S$ to which reference is made in the Texaco case emanated from conditions in any manner similar to those in this case, nor was there evidence that the solution proposed in the Texaco case would be feasible under the conditions shown in this record. In fact, as pointed out by the appellate court, the Texaco reference was wholly irrelevant, and the finding was not supportive of any conclusion reached by the Board.

For the reasons stated the judgment of the appellate court is affirmed in part and reversed in part, and the portion of the order of the Pollution Control Board which imposed the fine is reversed and the cause is remanded to the Pollution Control Board for further proceedings consistent with this opinion.

*Affirmed in part and reversed in part and remanded.*