62 Ill.2d 38 (1975)
338 N.E.2d 392
METROPOLITAN SANITARY DISTRICT, Appellant,
v.
THE POLLUTION CONTROL BOARD et al.  (The Environmental Protection Agency, Appellee.)
No. 47358.
Supreme Court of Illinois.
Opinion filed November 25, 1975.
*39 Allen S. Lavin, of Chicago (James B. Murray and Paul D. Lindauer, Jr., of counsel), for appellant.
William J. Scott, Attorney General, of Springfield (Richard W. Cosby and Russell R. Eggert, Assistant Attorneys General, of Chicago, of counsel), for appellee.
Judgment reversed.
MR. JUSTICE RYAN delivered the opinion of the court:
On November 11, 1971, the Illinois Pollution Control Board (Board) denied a petition filed by the Metropolitan Sanitary District of Greater Chicago (District) for a variance of the requirements of the Board's rules and regulations. The variance was sought as to the District's Streamwood Sewage Treatment Plant (Streamwood). On March 24, 1972, the District filed another petition for variance with the Board. On August 3, 1972, the Environmental Protection Agency (Agency) filed with the Board a complaint charging the District with violating regulations and standards adopted by the Board, thereby causing water pollution in violation of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111 1/2, par. 1012(a).) The complaint charges that the violations occurred during a period beginning July 1, 1970, and continuing to the date of the complaint "including but not limited to November 29, 1971, December 15, 1971, January 19, 1972, and February 2, 1972." The complaint also specifically *40 charged that on September 24, and September 27, 1971, the District had, by discharging its effluent, caused the death of various forms of aquatic life.
On May 17, 1972, the District filed an amended petition for variance. The petitions for variance and the complaint charging the violations were consolidated for hearing. Following the hearing the Board entered an order granting the variance requested and also imposing fines totaling $6,000. The appellate court affirmed (25 Ill. App.3d 152), and we granted leave to appeal.
The District first argues that the Board's order for granting a variance was conditioned upon the payment of a money penalty and is therefore invalid. The order entered reads:
"1. The Metropolitan Sanitary District of Greater Chicago (District) shall within 35 days after receipt of this order pay to the State of Illinois the following sums as penalties for the violations indicated:
a. $1,000 for violation of stream standards SWB  14 respecting dissolved oxygen during replacement of a trickling filter seal;
b. $5,000 for water pollution and violation of SWB  14 nuisance standards for effluent and stream quality.
* * *
7. The District is hereby granted a variance until June 29, 1973, from Rule 404 of Chapter 3 of the Rules and Regulations of the Pollution Control Board, on condition that the other provisions of this order are complied with. (Emphasis supplied.)"
The District, in support of its position, cites Citizens Utilities Co. v. Pollution Control Board, 9 Ill. App.3d 158, and Molex, Inc. v. Pollution Control Board, 9 Ill. App.3d 1032. In those cases the petition for a variance acknowledged that if it were allowed certain violations of pollution standards would occur. The Board granted the variance and imposed the penalty for the pollution that would result during the time that the variance was in effect. The orders criticized in those cases were, in effect, permitting *41 pollution for a price.
A different situation prevails in the case now before us. This is a consolidated proceeding involving not only a request for a variance but also an enforcement proceeding as to past acts of pollution. In this case it is the penalty imposed that is being attacked. We view the penalties not as a price for polluting during the term of the variance, but as a penalty for past acts which could properly be imposed in the consolidated hearing. We are not here concerned with the validity of the conditional nature of the variance, for there has been no attempt to revoke it for nonpayment of the penalties. In fact, the variance has expired by its own terms, the termination date as stated in the order being June 30, 1973.
The next issue involves the propriety of the penalties imposed. The $1,000 penalty relates to pollution that was caused while a trickling filter seal was being replaced. On March 5, 1971, the Environmental Protection Agency ordered the District to replace the mercury seal in its trickling filter. In compliance with this order the District undertook to install a new seal. The work was commenced on September 22, 1971, and completed on September 24. While the work was in progress almost 50% of all effluent was being bypassed directly into the stream with only primary treatment.
The chief of maintenance and operations for the District testified that while the seal was being replaced the filter had to be shut down. Alternate means of treating the effluent were impractical. The effluent could not have been stored in the lagoon since there was no way to pump it back into the plant, odors would arise from the lagoon, and if there were rain while the overflow was in the lagoon sewage could be backed into individual homes. The Agency presented no evidence to contradict this testimony or to show that other procedures were available to the District to prevent the pollution complained of. The Board in its order acknowledged that the Agency failed to rebut *42 this testimony. However, it concluded that the fact that no such alternate means were available at the Streamwood Plant is no defense.
The Environmental Protection Act provides (Ill. Rev. Stat. 1971, ch. 111 1/2, par. 1031(c)) that in hearings before the Board the burden is on the Agency to show that the "respondent has caused or threatened to cause air or water pollution" and that if such proof has been made the burden shall be on the respondent to show that compliance with the Board's regulations would impose an arbitrary or unreasonable hardship. It is not questioned in this case that the District did cause pollution during the installation of the new seal in its trickling filter. However, it is not enough for the Board to simply find that the District caused the pollution complained of. The Act further requires that in making its orders and determinations the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the "emissions, discharges or deposits involved." The facts and circumstances listed which the Act directs the Board to consider are "the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution." Ill. Rev. Stat. 1971, ch. 111 1/2, par. 1033(c)(iv).
The record contains no evidence to rebut the contention of the District that there was no practical or economically feasible way to eliminate the pollution while complying with the order of the Agency. However, the Board in its order stated:
"The District responded by denying there was anything it could do at the time to prevent the discharge of inadequately treated effluent while making the necessary repair * * *, and the Agency had nothing to say in rebuttal. But we do not think this disposes of the issue. Our decisions have consistently recognized an obligation to perform necessary repairs without wrecking the receiving stream. [Citations.] This obligation requires planning ahead in the construction of a treatment plant, to include *43 holding tanks, duplicate facilities, or other means for preventing harm when one unit is out of service. That no such means were provided at Streamwood is no defense. It is proof that inadequate precautions were taken and cause for imposing a money penalty."
The Act confers no authority upon the Board to arbitrarily impose penalties. The findings of the Board must be restricted to the evidence in the record. Here there was no evidence that there was any lack of planning ahead in the construction of the Streamwood Plant or that it was appropriate to have holding tanks or duplicate facilities. The mere fact that the Board may be possessed of a certain amount of expertise does not authorize it to make a determination unsupported by evidence in the record. A decision pursuant to an administrative hearing must be based upon testimony and other evidence received at the hearing, and a conclusion influenced by extraneous considerations must be set aside. (Des Plaines Currency Exchange, Inc. v. Knight, 29 Ill.2d 244, 247; Parker v. Department of Registration and Education, 5 Ill.2d 288.) The imposition of the $1,000 penalty is not supported by the record and must therefore be set aside.
The $5,000 penalty was imposed for alleged violations of the regulations and standards beginning on July 1, 1970, and continuing to the date of the filing of the complaint. Although not limited to the dates specified, the complaint charges that the violations occurred on November 29, 1971, December 15, 1971, January 19, 1972, and February 2, 1972. The four dates specified are all subsequent to the date that the Board denied the District's original petition for a variance. The District does not dispute the fact of pollution but cites the administrative conflicts that occurred as the reason for its failure to have built adequate facilities.
The record discloses that the District was aware of the need for additional facilities in this area as early as 1965. In 1966 it acquired land on which to construct what is referred to as the Poplar Creek Plant. The District also had *44 plans to construct interim facilities at Streamwood to be used until the Poplar Creek Plant was completed. In May, 1967, a firm of consulting engineers was engaged to prepare a design report on the proposed Poplar Creek Plant. In February, 1968, because of the progress being made on the Poplar Creek Plant, the District deleted from its plans the interim expansion of the Streamwood Plant. In June, 1968, the preliminary designs for the Poplar Creek Plant were completed and the necessary sewer systems to service the plant were designed.
The Northeastern Illinois Planning Commission (Northeastern) was created by the legislature and has the responsibility for the development of certain regional plans in a six-county area. This authority includes planning in the fields of transportation, open space conservation, recreation and pollution. Northeastern had been designated by the Governor as the agency to review application for Federal aid projects. In 1969 Northeastern advised the District that it was opposed to the Poplar Creek Project because it conflicted with the other aspects of Northeastern's over-all plan and suggested that the Poplar Creek basin be serviced by the Sanitary District of Elgin (Elgin). Although the District did not favor this procedure it nevertheless sought Elgin's cooperation to no avail.
It is not necessary to detail the correspondence and conferences that occurred involving the District, Northeastern, the Environmental Protection Agency and Elgin. The net result of the inter-agency conflict is stated in a letter from the Agency to Northeastern dated August 9, 1971:
"Because Poplar Creek [Plant] is not in conformance with the Regional Wastewater Plan, this Agency will have no recourse but to disapprove Federal and State grant requests * * *.
Thus unless [Northeastern] changes its position, the [District] must decide whether to construct this plant without Federal or State grants. The responsibility for servicing this area is with the [District], and there is no *45 apparent assurance * * * [Elgin] would accept responsibility for this area."
In August, 1970, about one year before the determination by the Environmental Protection Agency that it would be compelled to disapprove the District's application for Federal and State grants, the District, recognizing that because of these conflicts construction of the Poplar Creek Plant might be delayed, revived the plans for constructing an interim facility at Streamwood which it had deleted from its program in February, 1968. The interim project was advertised for bids, and an application for a construction permit was made to the Environmental Protection Agency. On February 19, 1971, the Agency denied the District's request for a permit to construct the interim improvement. The District then filed a petition for a variance with the Board to enable it to provide interim additional capacity at Streamwood. On November 11, 1971, the Board denied the variance, and the District immediately began preliminary design of another and different type of interim facility which it proposed to construct at Streamwood. This is a facility for which a variance during its construction was granted by the Board in this proceeding. The District also went ahead with its plan to construct the Poplar Creek Plant with or without Federal and State grants.
Although this court recognized the authority of the Board to impose monetary penalties in City of Waukegan v. Pollution Control Board, 57 Ill.2d 170, we have since held that the Act does not confer upon the Board authority to impose a penalty in every case of a violation of the Act or regulations. (Southern Illinois Asphalt Co. v. Pollution Control Board, 60 Ill.2d 204, 208.) In City of Monmouth v. Pollution Control Board, 57 Ill.2d 482, we held that the principal reason for the imposition of civil penalties under the Act is to provide a method to aid in the enforcement of the Act and that punitive considerations are secondary.
*46 The history of the District's acts related above discloses that it undertook to provide the additional facilities needed without any prodding by a State agency. There is no evidence that indicates that the District was dilatory or recalcitrant. Its programming for the completion of adequate facilities fell victim to inter-agency conflicts resulting in delays which made it impossible to complete the improvements in time to prevent the violations complained of. Under these circumstances the imposition of monetary penalties is not justified and is purely punitive. See Southern Illinois Asphalt v. Pollution Control Board.
In summary, the imposition of the $1,000 penalty finds no support in the record and is therefore unauthorized. The imposition of the $5,000 penalty is purely punitive, does not aid in the enforcement of the Act or regulations and must also be set aside.
For these reasons, the judgment of the appellate court is reversed.
Judgment reversed.
MR. JUSTICE CREBS took no part in the consideration or decision of this case.