ARNOLD N. MAY *et al.*, Petitioners, *v.* THE POLLUTION CONTROL
BOARD *et al.*, Respondents.

Second District (1st Division) No. 74-210

Opinion filed February 20, 1976.

Joseph A. Wright, Jr., William A. Kelly, and Laurence A. McHugh, all of Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago, for petitioners.

William J. Scott, Attorney General, of Chicago (Michael A. Benedetto, Jr., and Richard W. Cosby, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE GUILD delivered the opinion of the court:

Pursuant to section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1041) (hereinafter the Act) and the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) petitioners Arnold N. May and Hillview Farms, Inc., seek review of an order of the Illinois Pollution Control Board (hereinafter the Board) commanding petitioners to cease and desist from violating sections 9(a) and 12(b) of the Act (Ill. Rev. Stat. 1973, ch. 111½, pars. 1009(a) and 1012(b)) and imposing a $2500 fine.

Petitioners own and operate certain farmlands in and around the village of Richmond in McHenry County. Since approximately March, 1971, petitioners have been receiving sludge from the North Shore Sanitary District for which petitioners receive $30 per load. The sludge consists of sewage which has been treated at a sewage treatment plant. The treatment process consists of passing sewage through a settling tank where much of the solid materials settle to the bottom of the tank. The settled solids are then placed in thickeners to increase the percentage of solids. Following the thickening, the material is placed in anaerobic digesters where bacteria further decompose the waste. This thickened material, termed digested sludge, which is still 95% water, is, upon receipt from the North Shore Sanitary District, dumped into a holding pit containing hog and cattle manure. The resulting mixture is then spread on certain tracts of farmland by the use of a spray irrigation device for purposes of crop fertilization and soil enrichment. In 1972, May, without advice of counsel, inquired of the Environmental Protection Agency as to whether a permit for such activity was required. May was advised that a permit was required and on June 6, 1972, a permit was in fact issued by the Agency. This permit granted petitioners permission:

"* * * to install, own and operate spray irrigation facilities and related appurtenances for the purpose of applying a mixture of anaerobically digested and properly stabilized liquid sludge from the North Shore Sanitary District (Waukegan Plant) together with confined animal feedlot waste to a forty (40) acre site * * *."

In its amended complaint, the Agency alleged that petitioners had, on certain specified days, violated section 12(b) of the Act by spreading sludge on land other than that specified in the permit; that such violation created a water pollution hazard in violation of section 12(d) of the Act; and that petitioners' operations caused air pollution by the creation of a noxious odor in violation of section 9(a) of the Act. Following substantial discovery and extensive hearings, the Pollution Control Board issued its opinion and order, wherein it was found that petitioners had violated section 12(b) of the Act by spreading sludge on locations other than the permit area and had violated section 9(a) of the Act in that odors emanating from the sludge constituted air pollution. The Board further found no water pollution hazard and thus no violation of section 12(d) of the Act. The Board then ordered petitioners to cease and desist from violating section 9(a) and 12(b) of the Act; forbade petitioners from spreading sludge on nonpermit areas; forbade petitioners from accepting sludge or similar materials from any source other than the North Shore Sanitary District; and made petitioners jointly and severally liable to pay a $2500 fine.

Petitioners make two contentions on appeal. First, petitioners assert that the Board's finding that petitioners violated section 12(b) of the Act by violating the conditions of its permit is in error because no permit was required for the operations involved herein. The Board based its findings that a permit was required upon its conclusion that petitioners' operations were a "treatment works" as defined by the Board's rules and regulations. Petitioners contend that its operation is not a treatment works, and that therefore no permit was required for its operations. It is argued that in granting the permit herein the Agency engaged in a gratuitous act. Since no permit was required, petitioners conclude that it cannot be held to have violated section 12(b) of the Act by violating the conditions of its permit. Petitioners' second contention is that the Board erred in imposing a monetary penalty for violation of section 9(a) of the Act. In their brief, petitioners argued that to impose a fine without allowing a reasonable opportunity to comply with the "standards" which the Board set forth in its opinion and which had not theretofor existed violates due process of law. At the oral argument of this cause petitioners argued that the fine imposed was improper because it was not supported by the record.

We first consider whether an operating permit was required for the petitioners' operation from the Illinois Environmental Protection Agency. Section 12(b) of the Act, which petitioners were found to have violated, provides in part as follows:

"No person shall:

\* \* \*

(b) Construct, install, or operate any equipment \* \* \* capable of causing or contributing to water pollution \* \* \* of any type designated by Board regulations, without a permit granted by the Agency, or in violation of any condition imposed by such permit."

Chapter 3, rule 902 of the Illinois Pollution Control Board Rules and Regulations prohibits the operation of any "treatment works" without an operating permit issued by the Environmental Protection Agency. Chapter 3, rule 104 of the regulations includes the following definitions of "sewage," "treatment works," and "wastewater":

" 'Sewage' means water-carried human and related wastes from any source together with associated land runoff;

\* \* \*

'Treatment Works' means individually or collectively those constructions or devices, except sewers, used for collecting, pumping, treating, or disposing of wastewaters or for the recovery of by-products from such wastewater;

\* \* \*

'Wastewater' means sewage, industrial waste, or other waste, or any combination of these, whether treated or untreated, plus any admixed land runoff."

It is clear that if petitioners' spray irrigation devices for the spreading of sludge and feedlot wastes is a "treatment works" then an operating permit is required for its use under rule 902 and section 12(b) of the Act, and petitioners may properly be held to have violated section 12(b) of the Act by using the devices on areas beyond that authorized by the permit.

■■■ At the outset, it is to be observed that petitioners do not challenge the factual basis underlying the Board's decision, nor do they assert that the Board erred in interpreting the Act. Rather, petitioners contend that the Board erred in interpreting its own rules and regulations. In construing regulations, the same rules which apply to the construction of statutes apply. (See *Rucker v. Wabash R.R. Co.* (7th Cir. 1969), 418 F.2d 146.) Generally when a statute (or regulation) promotes the public health or welfare, it should be construed liberally. (*Zehender & Factor, Inc. v. Murphy* (1944), 386 Ill. 258, 53 N.E.2d 944; *Prosk v. Allstate Insurance Co.* (1967), 82 Ill. App. 2d 457, 226 N.E.2d 498). The prime concern in construing a statute is to give effect to the true intent and meaning of the body which adopted it. (*Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447, 143 N.E.2d 235.) In *Bowles v. Seminole Rock & Sand Co.* (1945), 325 U.S. 410, 89 L. Ed. 1700, 65 S. Ct. 1215, the United States

Supreme Court made the following observation regarding the weight which is to be given to an administrative body's interpretation of its own rule:

> "Since this involves an interpretation of an administrative regulation, a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." (325 U.S. 410, 413-14, 89 L. Ed. 1700, 1702.)

We also observe the well-established principles that on a review of an administrative decision a court need only determine whether there was competent evidence in the record to support the decision (*Cobin v. Pollution Control Board* (1974), 16 Ill. App. 3d 958, 307 N.E.2d 191) and that an administrative action taken under statutory authority will not be set aside unless it is clearly arbitrary, unreasonable or capricious. *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782.

With the issue presented thus limited and with the rules of construction thus defined, we turn to the merits of the petitioners' first contention. The Board found petitioners' operations a "treatment works" in the following language: "The spray irrigation system operated on the permit area is a method of sludge disposal." Thus, the Board found petitioners were engaged in "disposing of wastewaters" within the definition of "treatment works." The Agency argues on appeal that the material disposed of by petitioners was wastewater either because it was "other waste" or because it was "treated sewage" within the definition of wastewater.

Petitioners contend that sludge is not wastewater as defined in the regulations and cite the definition of effluent contained in chapter 3, rule 104 of the Illinois Pollution Control Board Rules and Regulations as authority therefor:

> "'Effluent' means any wastewater discharged directly or indirectly, to the waters of the State or to any storm sewer, and the runoff from land used for the disposition of wastewater or sludges, but does not otherwise include land runoff."

Petitioners argue that since the Board specified sludge *in addition to* wastewater in its definition of effluent, the Board must have considered sludge to be something other than wastewater. The Agency responds by stating that the phrase "or sludges" is mere surplusage in the definition

of effluent. In support thereof, the Agency points to the Board's opinion in *In re Water Quality Standards* (1972), 3 Ill. P.C.B. Op. 401, 402, where the Board, in construing the definition of effluent, deemed it unnecessary to include the phrase "or sludges." In that opinion, the Board stated:

> " * * * the definition makes clear that land runoff is not covered by these standards except when land disposal is used for the treatment of wastewater."

The Agency further argues that if sludge is held to be not included in the definition of wastewater, then its discharge directly into the waters of this State (as opposed to the runoff from land used for the disposition of sludges) would be completely exempted from the Board's effluent regulations.

In addition to the above, petitioners cite *County of Grundy v. Soil Enrichment Materials Corp.* (1973), 9 Ill. App. 3d 746, 292 N.E.2d 755, for the proposition that digested sludge is a well-recognized and valuable fertilizer and soil conditioner which, when dried and bagged, is sold under the trade name Milorganite. Petitioners then argue that should the Board's decision be affirmed, everyone who purchases a bag of Milorganite will be required to obtain a permit from the Environmental Protection Agency prior to spreading it on their backyard.

In further support of their argument that their operations were not within the permit requirements of the Act, petitioners cite the opinion of the Board in *In re Plant Nutrients* (1972), 4 Ill. P.C.B. Op. 127. Petitioners contend that this opinion indicates that the Board has declined to adopt regulations governing the use of sludge as a fertilizer and soil conditioner. In pertinent part, the Board therein stated:

> "The proposal relating to sewage sludge and effluent was intended to limit the application of available nitrogen to the same level as in fertilizer. Since we have not adopted a limit on nitrogen rate, we are not suggesting a regulation on sewage sludge. Adequate safeguards can be developed by the Environmental Protection Agency in connection with site approval augmented by surveillance after the sewage material application is in progress."

In response, the Agency argues that as to sludge, the Board in the plant nutrient proceedings was concerned only with nitrogen levels and that the decision to not adopt regulations for nitrogen levels was based upon the fact that the testimony was "confusing and unconclusive." The opinion affirms, however, in the Agency's view, the Board's authority over the spreading of sludge since it assumed that the Agency has authority (given by the Board) to regulate sludge disposal by site approval and surveillance. The Agency further argues that many factors in addition to nitrogen levels must be considered in deciding whether to proceed

with a project and that it would be unreasonable to assume that the Board intended to allow such a decision to be made by petitioners' inexperienced employees.

The final point made by petitioners in support of their contention that their operations were not subject to the permit requirements of the Act involves the 1973 Wastewater Land Treatment Site Regulation Act (Ill. Rev. Stat. 1973, ch. 111½, par. 581 *et seq.*). Section 3.05 of this Act (Ill. Rev. Stat. 1973, ch. 111½, par. 583.05) states:

> "No person may establish, operate, manage or maintain any wastewater land treatment site or any digested sludge utilization site without first obtaining a permit from the Illinois Environmental Protection Agency."

Petitioners argue that if their operations were already subject to Rule 902 as a "treatment works," then the requirement that anyone who establishes, operates, manages or maintains a wastewater land treatment site or a digested sludge utilization site obtain a permit from the Environmental Protection Agency would be useless and repetitive. Assuming that the General Assembly did not undertake a useless and repetitive act by the enactment of the Wastewater Land Treatment Site Regulation Act, petitioners argue, leads to the conclusion that prior to its enactment petitioners' activities were unregulated.

With respect to the specific arguments raised by petitioners, we find the Agency reasoning persuasive. In addition, while the court in *County of Grundy v. Soil Enrichment Materials Corp.* noted that there was testimony to the effect that digested sludge is a well recognized and valuable fertilizer and found that its use was an "agricultural purpose" and therefore exempt from the Grundy County Zoning Ordinance, the court also found that the digested sludge being applied by the defendant therein was being applied under a permit issued by the Environmental Protection Agency. That case is, therefore, no authority for the proposition that the petitioners activities were not subject to the permit requirements of the Act. Also, with respect to the Wastewater Land Treatment Site Regulation Act, we find that the fact that the Act recognizes a distinction between wastewater land treatment sites and digested sludge utilization sites (see Ill. Rev. Stat. 1973, ch. 111½, pars. 582.04 and 582.06) and the fact that the Act requires a permit for the operation of both types of facilities does not aid petitioners in their argument. The fact that this Act may, in some respects, overlap the Pollution Control Board regulations does not necessitate the conclusion that prior to the Act the application of digested sludge to farmlands was unregulated by the Board.

■■  In summary of the matters considered thus far, we find that peti-

tioners' operations were subject to the permit requirements of the Act. The material which petitioners spread on the farmlands was clearly wastewater because it was treated sewage. By spreading the material upon the land, petitioners were engaged in the disposal of wastewater and therefore petitioners' operations constitute a treatment works within the meaning of the Pollution Control Board's Rules and Regulations.

We turn then to a consideration of petitioners' second contention that the fine imposed was improper either because the Board failed to allow petitioners a reasonable time to comply with the "standards" which were set forth by the Board in its opinion which had not theretofor existed or because the fine is unsupported by the record. It is to be observed that petitioners concede that the cease and desist order with respect to the section 9(a) violation was appropriate. In reviewing the order of the Board we find that the imposition of the $2500 fine is unsupported by the record and was, therefore, unauthorized.

In *Metropolitan Sanitary District v. Pollution Control Board* (1975), 62 Ill. 2d 38, 45, 338 N.E.2d 392, 397, the Supreme Court stated the following:

> "Although this court recognized the authority of the Board to impose monetary penalties in *City of Waukegan v. Pollution Control Board*, 57 Ill. 2d 170, we have since held that the Act does not confer upon the Board authority to impose a penalty in every case of a violation of the Act or regulations. (*Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill. 2d 204, 208.) In *City of Monmouth v. Pollution Control Board*, 57 Ill. 2d 482, we held that the principal reason for the imposition of civil penalties under the Act is to provide a method to aid in the enforcement of the Act and that punitive considerations are secondary."

In *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 341, 328 N.E.2d 5, 10, the Supreme Court stated, in reference to its opinion in *City of Monmouth v. Pollution Control Board* (1974) 57 Ill. 2d 482, 313 N.E.2d 161:

> "We noted that in the imposition of a fine, the Board should take into consideration all of the factors, as expressed in section 33(c)."

Section 33(c) of the Act states the following:

> "(c) In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:
>
> (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source." Ill. Rev. Stat. 1973, ch. 111½, par. 1033(c).

In making its determination of penalty, the Board in this case did in fact consider the factors set forth in section 33(c). However, with the exception of the first of the four section 33(c) factors, each finding of the Board favored petitioners. With respect to the "character and degree of injury" the Board found, "[t]he health effects were minimal. More serious, however, is the discomfort and inconvenience caused to neighbors over a long period of time." With respect to the "social and economic value" the Board found, "* * * the social value of such projects is very important and weighs heavily in favor of mitigation." With respect to the location of the pollution source, the Board found, "* * * the basically rural character of the area is well-suited to such a project." Finally, with respect to the technical practicability and economic reasonableness of reducing the environmental impact of the pollution, the Board found, "* * * although several methods of odor control appear feasible, they may not be realistically possible once the sludge has been accepted at the permit area. Dumping of sludge at non-permit areas had minimal adverse environmental impact."

■■ In light of these findings, we believe that that portion of the Board's order imposing a fine of $2500 is against the manifest weight of the evidence. In imposing the fine the Board did not distinguish between that portion which related to the section 12(b) violation and that portion which related to the section 9(a) violation. However, since both violations resulted from the same conduct of the petitioners (in environmental terms) and since penalties are imposed primarily to aid in the enforcement of the Act rather than to impose a punishment, that portion of the order imposing a $2500 fine is hereby reversed without remandment.

Therefore, we hold that that portion of the order of the Board which orders petitioners to cease and desist from violating section 9(a) and 12(b) of the Act is affirmed. Petitioners' operations were clearly subject to the permit requirements of the Act. That portion of the order imposing a $2500 fine is reversed.

Affirmed in part and reversed in part.

SEIDENFELD, P. J., and HALLETT, J., concur.