THE CITY OF CHICAGO, Plaintiff-Appellant, v. VIOLA COTTON et al., Defendants-Appellees.

Defendants-Appellees.

First District (1st Division)    No. 1—03—2892

Opinion filed February 28, 2005.

2

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellant.

No brief filed for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, City of Chicago (hereinafter City), appeals from the denial of its motion to reconsider the statutory damages imposed on defendant, Viola Cotton. The City contends that the circuit court acted without authority and entered a void judgment when, after finding liability against Cotton under an ordinance that set a range for monetary fines in the event of a violation, it imposed a fine below that range. We reverse and remand.

## FACTUAL BACKGROUND

Cotton owned two rental properties on the south side of Chicago at 1739 East 78th Street and at 7801 South Ridgeland Avenue, and was responsible for paying their gas bills. By the beginning of 2002, however, Cotton had fallen in arrears on such payments, creating an outstanding bill between $10,000 to $12,000. Hence, gas service was discontinued to those properties, depriving the tenants therein of heat and hot water. This condition persisted in the properties for 20 days, between January 8 and February 7, 2002.

In response to the condition of the properties, the City filed a complaint against Cotton, alleging violation of the sections of the Building Code (Code) requiring the maintenance of adequate heating facilities in residential buildings (Chicago Municipal Code § 13—196—400 (1988)), the provision of heat (Chicago Municipal Code § 13—196—410 (1988)), and the provision of hot water (Chicago Municipal

Code § 13—196—430 (1988)). Among other remedies, including the appointment of a receiver to reestablish heat to the properties, the City sought the imposition of a penalty in the amount of $1,500 per day that the properties were in violation of the Code. The City calculated the $1,500 daily penalty as $500 for each Code section allegedly violated.

In its answer to the complaint, Cotton admitted her failure to comply with the cited provisions of the Building Code for the time period charged. Based on these admissions, the City moved for and was granted summary judgment. However, the circuit court only awarded damages in the amount of $2,000 based on a calculation of $100 per day for 20 days of noncompliance.

The City moved the circuit court to reconsider its judgment, arguing that the circuit court was required to impose a fine of at least $12,000, as the Code provided for a minimum fine of $200 per day per violation. The circuit court denied the motion, however, and the City now appeals.

## II. ANALYSIS

We have been denied the benefit of an appellee's brief in this case. However, we will still address the merits as instructed by our supreme court in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976) ("if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal").

On appeal, the City argues that, as the Code's language is clear and fixes a minimum penalty, without investing any discretion in a court to deviate from the prescribed range of penalties, the circuit court abused its discretion by imposing a penalty below the minimum penalty fixed by the Code. Cotton, on the other hand, would appear to argue that the circuit court has an inherent power to craft a remedy appropriate to the circumstances that could not be fettered by a legislative body, at least in the context of civil, municipal ordinance violations.

At the motion hearing, the circuit court inquired "Well, what about the notion of discretion? *** Shouldn't I have the discretion to, in the context of a particular set of circumstances, deviate below or above the window, if you will, provided by either the City Council of the City of Chicago or the General Assembly down in Springfield?" Picking up on this question, Cotton argued:

> "Judge, as you probably well know, there is this public debate that goes on both in state courts and federal, about judicial discretion.

* * *

And those on one side suggest that we empowered you to make decisions, but on the other hand, under our system of government, there is a legislative body that enacts rules. So what is the balance? Where is the balance of power?

And there is this frustration in some circles that say that, you know, we entrust a lot of power in judges, but, at the same time, we don't trust them to do what is right in certain situations, and that debate is going on primarily in the context on criminal sentences, but it applies in other circles, I believe.

And, in fact, in the very statute that we are arguing about, there is this right that they say should be from a minimum of $200 to, I think, a max of five. So inherent in the words is the notion of discretion.

Now, since our system operates basically on the English common law where judges were given discretion in fashioning an appropriate remedy given certain facts, and, in fact, inherent in the decision is that notion, the abiding notion that in our system of legal jurisprudence, there is the notion of judicial discretion, and probably the only area of law that I am aware of right now where judges' hands are more bound than others is in the criminal area."

Cotton also presented the circuit court with the appellate court's decision of *Village of Glenview v. Ramaker*, 282 Ill. App. 3d 368, 668 N.E.2d 106 (1996), urging that, under *Ramaker*, when a defendant later comes into compliance with a statute, and is otherwise cooperative with authorities, a court may impose a penalty beneath that specified in the statute.

After hearing these arguments, the circuit court concluded:

"[T]his is an important issue, and it's an issue, which I believe is really appropriate for further appellate direction.

* * *

I am going to rely on the *Ramaker* case for the proposition that in a civil action commenced by a municipality like the City of Chicago, in assessing a *per diem* penalty or find [*sic*] once liability has been established, that there exists with the trial court the discretion to either deviate downward from the minimum penalty recited in that local ordinance or similarly, to deviate above the maximum penalty stated by that same ordinance."

■ We disagree with Cotton and the circuit court, and agree with the City.

It is axiomatic that, "[w]here a statute is clear and unambiguous," "[t]he statute must be enforced as written, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Lawrence v. Regent Realty*

*Group, Inc.,* 197 Ill. 2d 1, 10, 754 N.E.2d 334, 339 (2001); see also *In re D.L.,* 191 Ill. 2d 1, 9, 727 N.E.2d 990, 994 (2000) ("there is no rule of construction that authorizes a court to say that the legislature did not mean what the plain language of the statute provides"); *County of Knox ex rel. Masterson v. Highlands, L.L.C.,* 188 Ill. 2d 546, 556, 723 N.E.2d 256, 263 (1999) ("In interpreting a statute, it is never proper for a court to depart from [the] plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent"); *People ex rel. Baumgardner v. Shultz,* 298 Ill. 125, 128, 131 N.E. 279, 280 (1921) ("The courts cannot say that the legislature did not mean what in plain language is expressed in the statute as its intention, and where the statute does not violate a constitutional provision it is the duty of this court to give effect to such intention though evil consequences may result"); *McGann v. People ex rel. Simpson,* 227 Ill. 567, 570, 81 N.E. 702, 703 (1907) ("The courts cannot disregard the plain language of a statute, and it is their duty to accept it as they find it and enforce it as it is plainly written"); *Rucker v. Fuller,* 11 Ill. 223, 229 (1849) ("when the Legislature has clearly declared its intention, the Courts have no power to depart from the plain language and requirement of the statute for the purpose of establishing, as they may suppose, a more equitable rule").

This principle is equally applicable in civil cases as in criminal cases, as demonstrated by the fact that all the cases just cited were, in fact, civil disputes. See *Lawrence,* 197 Ill. 2d 1, 754 N.E.2d 334 (involving tenant suit against landlord under Chicago Residential Landlord Tenant Ordinance); *In re D.L.,* 191 Ill. 2d 1, 727 N.E.2d 990 (termination of parental rights involving the Adoption Act); *Highlands,* 188 Ill. 2d 546, 723 N.E.2d 256 (dispute surrounding zoning laws); *Schultz,* 298 Ill. 125, 131 N.E. 279 (dispute over school district consolidation under then School Law); *McGann,* 227 Ill. 567, 81 N.E. 702 (employment dispute involving then civil service act); *Rucker,* 11 Ill. 223 (dispute among judgment creditors under statute allowing for attachment of judgment debtor's property).

A related and also well-established corollary to the principle that courts will adhere to and enforce the legislature's clearly expressed will is that, when a statute provides for certain penalties, without providing for additional judicial discretion, the courts will impose only those penalties provided. See generally *People v. Wade,* 116 Ill. 2d 1, 6, 506 N.E.2d 954, 956 (1987) ("a trial court has an obligation to order the criminal penalties mandated by the legislature"); *People v. DeRosa,* 362 Ill. 161, 163, 199 N.E. 267, 268 (1935) ("the trial court has no [further] discretion as to the extent of the punishment [citation], as the statute provides that the penalty to be imposed shall be imprison-

ment in the penitentiary for a term of not less than one nor more than twenty years"); *Village of Spring Grove v. Kubat*, 201 Ill. App. 3d 991, 993, 559 N.E.2d 1081, 1082 (1990) ("where a mandatory fine exists, the trial court is afforded no discretion and must impose the mandatory amount set forth in the schedule of fines").

■ Thus, when a court refuses to impose any penalty, when a penalty is prescribed by statute, it acts without authority. See *City of Naperville v. Bernard*, 139 Ill. App. 3d 784, 785, 487 N.E.2d 771, 772 (1985); *People v. Erskine*, 53 Ill. App. 3d 948, 949-50, 369 N.E.2d 164, 165 (1977); see also *Village of Park Forest v. Bragg*, 38 Ill. 2d 225, 229-30, 230 N.E.2d 868, 870-71 (1967) (reversing the circuit court when it imposed a fine but suspended its collection indefinitely). A court similarly acts without authority when it seeks to impose a sentence in excess of that provided by statute. See *Grody v. Scalone*, 408 Ill. 61, 66, 96 N.E.2d 97, 99 (1950) (where a statute set out range of fines and periods of incarceration, "[i]t would seem *** that the legislature's intent was that the penalty expressed in the statute should be exclusive," and the circuit court could not impose an additional penalty against a business by voiding its contracts); *People v. Rinaldi*, 179 Ill. App. 3d 539, 545, 534 N.E.2d 515, 520 (1989) ("In the absence of any legislative intent to grant the trial court discretion ***, we find that the schedule of charges is mandatory and the trial court had no discretion to assign a charge in excess ***"). Likewise, a court acts without authority if it attempts to impose a penalty beneath the minimum provided by statute. See *City of Chicago v. Roman*, 184 Ill. 2d 504, 510, 705 N.E.2d 81, 85 (1998) (a "court exceeds its authority if it orders a lesser sentence than what the statute mandates"), citing *Wade*, 116 Ill. 2d at 6, 506 N.E.2d at 956; *City of De Kalb v. White*, 227 Ill. App. 3d 328, 330-31, 591 N.E.2d 522, 523-24 (1992); *City of Springfield v. Ushman*, 71 Ill. App. 3d 112, 388 N.E.2d 1357 (1979). See also *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 585 N.E.2d 51 (1991) (city could not increase parking fines in violation of existing ordinance and court rule that set exact amount of fines); *In re Application of the County Treasurer of Cook County, Illinois, for Judgment & Sale of Real Estate for General Taxes for the Year 1980*, 185 Ill. App. 3d 701, 705, 542 N.E.2d 15, 18-19 (1989) (where Revenue Act provided "a mechanical formula for calculation of [an] award [of damages] which [did] not mention equitable considerations," the circuit court was required to follow the formula).

These principles are equally compelling whether involving municipal ordinances or state statutes. *White*, 227 Ill. App. 3d at 331, 591 N.E.2d at 523-24 ("A judicial decision disregarding the minimum sentence set by the State legislature *** is an abuse of discretion ***.

[Citation.] This principle also applies to municipal ordinance minimum penalty provisions"); see also *Roman*, 184 Ill. 2d at 511, 705 N.E.2d at 86 ("He argues that these principles [suggesting that double jeopardy is not implicated when a court revisits a case to correct an illegal, void sentence] apply only to statutes and not to municipal ordinances. We cannot accept this argument. A municipal ordinance has the force of law over the community in which it is adopted and *** operates as effectively as a law passed by the legislature"); accord *City of Chicago v. Alessia*, 348 Ill. App. 3d 218, 807 N.E.2d 1150 (2004) (reversing the same circuit court judge in this case for imposing a penalty beneath the minimum provided for in another penalty provision of the City's Building Code).

■ Looking then to the case at bar, we are compelled to conclude that the circuit court erred in deviating from the penalty range of the ordinance. There is no dispute that the applicable penalty provision in the Code is found in section 13—12—040, which states that "violation of *** any of the provisions of this Code enumerated in Section 13—12—010, to which no other penalty provision is applicable *shall* be punished by a fine of not less than $200.00 and not more than $500.00, and each day such violation shall continue shall constitute a separate and distinct offense for which a fine as herein provided shall be imposed." (Emphasis added.) Chicago Municipal Code § 13—12—040 (2003). Under the plain language of the section, no further discretion is invested in an enforcing court. As explained in *Puss N Boots, Inc. v. Mayor's License Comm'n*, 232 Ill. App. 3d 984, 987, 597 N.E.2d 650, 653 (1992), the use of the word "shall" in the Chicago Municipal Code is mandatory, not directory. Thus, the $100-per-day fine imposed was not authorized. The circuit court was obligated, after finding Cotton liable, to assess a daily fine within the statutorily authorized range of $200 to $500 per day.

We do not see *Ramaker* as allowing for a different result. There, a resident was charged under a village ordinance prohibiting the keeping of swine when she kept a Vietnamese potbellied pig as a pet and was subsequently found guilty and assessed a fine of $500. *Ramaker*, 282 Ill. App. 3d at 370, 668 N.E.2d at 107-08. Roughly nine months prior to the village's complaint against her, the resident had attempted to come into compliance with the village ordinances by lobbying for a change in the ordinance to allow for the keeping of miniature Vietnamese pigs. *Ramaker*, 282 Ill. App. 3d at 370, 668 N.E.2d at 107. On appeal, the *Ramaker* court considered at length whether the pig at issue fell under the meaning of "swine" in the ordinance, and whether the ordinance was a valid exercise of the village's police power under the home rule provisions of the Illinois Constitution. *Ramaker*, 282 Ill.

App. 3d at 370-72, 668 N.E.2d at 108. Subsequently, and very briefly, the *Ramaker* court addressed the amount of the fine. *Ramaker*, 282 Ill. App. 3d at 372-73, 668 N.E.2d at 109. The court determined that, based on the defendant's removal of her pig from the village pending trial and appeal, she had come into compliance with the ordinance. *Ramaker*, 282 Ill. App. 3d at 372, 668 N.E.2d at 109. The court then stated "[w]here cooperation is shown, compliance has come about, and imposition of a fine would not aid enforcement, a fine is improper," and then reduced the defendant's fine to the nominal amount of $1, citing to *Harris-Hub Co. v. Pollution Control Board*, 50 Ill. App. 3d 608 (1977), in support. *Ramaker*, 282 Ill. App. 3d at 372-73, 668 N.E.2d at 109.

To begin, considering that the validity of the amount of the penalty imposed was not the thrust of the opinion, and apparently was never even argued by the parties, we do not perceive *Ramaker* as purporting to challenge the centuries-old canons of statutory interpretation we previously discussed, which are presented in precedents of our supreme court. Further, we note that the *Harris-Hub* case, on which *Ramaker* relied, came from a line of cases interpreting an entirely different statutory scheme than the one at issue in this case.

*Harris-Hub* dealt with a penalty imposed under the Environmental Protection Act (Act) (now 415 ILCS 5/1 *et seq.* (West 2002)). As the City correctly observes, the civil penalty provision of the Act generally does not set mandatory minimum fines, instead speaking of fines "not to exceed" a certain amount. 415 ILCS 5/42(a) (West 2002). Additionally, the Act expressly affords the courts broad discretion in fashioning penalties, permitting courts to "consider any matters of record in mitigation or aggravation of penalty" (415 ILCS 5/42(h) (West Supp. 2003)), including the "due diligence on the part of the respondent in attempting to comply [with the Act]" (415 ILCS 5/42(h)(2) (West Supp. 2003)); "whether the respondent voluntarily self-disclosed [the violation of the Act]" (415 ILCS 5/42(h)(6) (West Supp. 2003)); and what "amount of monetary penalty [would] serve to deter further violations by the respondent and to otherwise aid in enhancing voluntary compliance with the Act by the respondent and other persons similarly subject to the Act" (415 ILCS 5/42(h)(4) (West Supp. 2003)). Based on the broad discretion granted to the courts under this section and others in the Act, our supreme court concluded, "[o]bviously the General Assembly did not intend that the Pollution Control Board should impose a monetary fine in every case of a violation of the Act or regulations." *Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill. 2d 204, 208, 326 N.E.2d 406, 408 (1975). Here, on the other hand, by plainly stating that "violation of *** any of the provisions of this Code

enumerated in Section 13—12—010, to which no other penalty provision is applicable *shall* be punished by a fine of not less than $200.00 and not more than $500.00," the Chicago city council has provided courts with no similar discretion and, instead, exhibited its intent that fines be imposed for every violation of the Code.

In any event, even assuming *arguendo* that *Ramaker* and its predecessors interpreting the Act intended to generally grant discretion to courts to depart below statutory minimum fines "[w]here cooperation is shown, compliance has come about, and imposition of a fine would not aid enforcement" (*Ramaker*, 282 Ill. App. 3d at 372, 668 N.E.2d at 109), we would not find such circumstances to exist in Cotton's case. In those cases where fines were held to be inappropriate, compliance came about through significant, voluntary efforts of the violator. For example, the *Ramaker* defendant gave up her pig prior to the adjudication of the complaint against her. *Ramaker*, 282 Ill. App. 3d at 372, 668 N.E.2d at 109; see also *City of Monmouth v. Pollution Control Board*, 57 Ill. 2d 482, 490, 313 N.E.2d 161, 166 (1974) ("the City, at substantial expense, co-operated in the implementation of every proposal, and *** through the City's efforts the problem appears to have been solved"). Additionally, with respect to *City of Monmouth*, penalties would not have assisted in enforcement, as to the defendant, or any other potential polluter, because the case involved generally nonculpable behavior. See *City of Monmouth*, 57 Ill. 2d at 489-90, 313 N.E.2d at 165 ("The record shows that *** the failure to eliminate the odors [from sewage treatment] was the result of the absence of an effective technological method for so doing. *** Neither the record nor the briefs suggest[ ] what more the City might have done"); see also *Southern Illinois Asphalt*, 60 Ill. 2d at 210, 326 N.E.2d at 409 ("The failure to obtain the permit was pure inadvertence"); *Metropolitan Sanitary District v. Pollution Control Board*, 62 Ill. 2d 38, 42, 338 N.E.2d 392, 395 (1975) ("The record contains no evidence to rebut the contention of the District that there was no practical or economically feasible way to eliminate the pollution while complying with the order of the Agency"). Here, however, we find no evidence that Cotton had ever significantly cooperated with the City in attempting to bring her properties into compliance with the Building Code, let alone ever having actually brought the properties into compliance through her own efforts. As the City pointed out in the circuit court, heat was only restored to the properties through the efforts of a court-appointed receiver. Further, we also find no evidence in the record in this case to suggest that Cotton was not fully culpable for failing to provide heat to her tenants. Thus, there is nothing in this record to challenge the fact that the fines presented in the

ordinance would "aid in enhancing voluntary compliance \*\*\* by the respondent and other persons similarly subject to" the Building Code, for, as our supreme court observed in *Lawrence*, "[w]ithout the prospect of liability for significant \*\*\* damages, landlords would \*\*\* have little incentive to meet their statutory obligations." *Lawrence*, 197 Ill. 2d at 10, 754 N.E.2d at 339.

We conclude by noting that, contrary to Cotton's apparent contention, the mandatory nature of the fines prescribed under this ordinance would not encroach upon the integrity of the courts charged with its enforcement under the doctrine of separation of powers. As our supreme court said in *People ex rel. Ward v. Salter*, 28 Ill. 2d 612, 615, 192 N.E.2d at 884 (1963), while reversing a circuit court that imposed less than the statutory minimum fine: "the nature, character and extent of penalties are matters almost wholly legislative, and \*\*\* the courts have jurisdiction to interfere with such legislation only where the penalty shocks the conscience of reasonable men." See also *People v. Hill*, 199 Ill. 2d 440, 447, 771 N.E.2d 374, 379 (2002) ("the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence"). We further note that a separation of powers argument is not clearly supported even, as asserted by Cotton at the motion hearing, in the context of English judicial history, save for the most arcane. See T. Sedgwick, A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law, ch. 5, at 127 (2d ed. 1874) (writing in the 1850s: "I apprehend that no modern case can be found where the English judiciary have attempted to question the supremacy of Parliament").

For all the foregoing reasons, we reverse the judgment and remand the cause to afford the circuit court the opportunity to enter a judgment in accord with the range of fines provided by the people's duly elected representatives. We do not now decide whether, as sought by the City, a penalty is to be imposed for each Code section violated, each day, irrespective of the extent to which each such violation is engendered by a common, single negative act, namely failure to provide for heating fuel; or, as Cotton would contend, a single penalty for each day, irrespective of the number of violations engendered by that single act. That issue has not been fully addressed by the City in its brief before this court, nor by the appellee, who has chosen not to file any brief on appeal; nor, as is apparent from the record, did the parties fully address or argue this issue in the circuit court below. Rather, the focus of the parties and the court below appears to have been directed solely to the question of whether the circuit court was

11

free to depart from the penalty provisions of the ordinance entirely, rather than upon the scope of those penalty provisions as written into the ordinance. We therefore leave that issue for the circuit court to first determine on remand.

Reversed and remanded.

CAHILL, P.J., and McBRIDE, J., concur.