PEOPLE OF the STATE OF
ILLINOIS, Plaintiff,

v.

COMMONWEALTH EDISON
COMPANY, Defendant.

PEOPLE OF the STATE OF
ILLINOIS, Plaintiff,

v.

COMMONWEALTH EDISON COMPANY,
an Illinois Corporation, James J. O'Conner, Hubert H. Nexon, Cordell Reed and
Thomas Ayers, Defendants.

Nos. 78 C 2675, 79 C 311.

United States District Court,
N. D. Illinois, E. D.

April 4, 1980.

George Wm. Wolff, Asst. Atty. Gen., Chicago, Ill., William J. Scott, Atty. Gen., Patrick J. Chesley, Asst. Atty. Gen., Springfield, Ill., for plaintiff.

Richard E. Powell, Eugene H. Bernstein, Isham, Lincoln & Beale, Chicago, Ill., Graham & Graham, Hugh Graham, Springfield, Ill., for Commonwealth Edison Co. et al.

## MEMORANDUM

LEIGHTON, District Judge.

These are two consolidated suits brought on behalf of the people of Illinois by their Attorney General to halt and redress alleged violations of certain Rules and Regulations of the Illinois Pollution Control Board.[1] In 78 C 2675, plaintiff seeks relief from defendant Commonwealth Edison Company for air pollution created by operation of its Waukegan, Illinois station units 5, 6, 7, and 8; in 79 C 311, a case transferred to this court from the United States District Court for the Southern District of Illinois, plaintiff seeks relief from defendant Edison and defendants O'Conner, Ayers, Nexon, and Reed, Edison's president, chairman of the board, senior vice-president, and assistant vice-president in charge of environmental affairs, respectively, for air pollution created by operation of Edison's Kincaid, Illinois plant. Jurisdiction of the court is invoked pursuant to the "citizens suit" section of the Clean Air Act, 42 U.S.C. § 7604, and 28 U.S.C. § 1331.

In 78 C 2675, plaintiff alleges that defendant Edison has failed to obtain an operating permit for its Waukegan station units from the Illinois Environmental Protection Agency in violation of Rule 103(b) of the Illinois Pollution Control Board Rules and Regulations; that defendant's Waukegan station units emit smoke or other particu-

---

1. Illinois Pollution Control Board Rules and Regulations, Ch. 2: Air Pollution. These rules and regulations were promulgated by the Illinois Pollution Control Board pursuant to Ill. Rev.Stat. ch. 111½, § 1005(c) (1977) and were submitted by the State of Illinois to the Administrator of the United States Environmental Protection Agency as part of the State of Illinois Implementation Plan in accordance with Section 110(a) of the Clean Air Act, 42 U.S.C. § 7410(a). Acting pursuant to that section and 40 C.F.R. Part 51, the Administrator approved these Rules and Regulations at 40 C.F.R. § 720 *et seq.*

late matter into the atmosphere of an opacity greater than 30% in violation of Rule 202(b) of the aforementioned Rules and Regulations; that the Waukegan station units emit particulate matter into the atmosphere in excess of 0.1 pounds of such matter per million B.T.U.'s in violation of Rule 203(g); and that the Waukegan station units violate Rule 102 by emitting particulate matter into the atmosphere that significantly contributes to violations of the Federal Ambient Air Quality Standards for particulate matter, as promulgated pursuant to 42 U.S.C. § 7409.

In 79 C 311, plaintiff alleges that Edison and certain of its officers failed to obtain an operating permit for its Kincaid, Illinois plant in violation of Rule 103(b); that the Kincaid plant operated by defendants emits smoke or other particulate matter in violation of Rule 202(b); that the Kincaid plant emits particulate matter in violation of Rule 203(g); that the Kincaid plant emits sulfur dioxide into the atmosphere in excess of 6.0 pounds per million B.T.U.'s of actual heat input in violation of Rule 204(c)(1)(b); and that the Kincaid plant violates Rule 204(e) by emitting sulfur dioxide in excess of a limit established by a formula contained in that Rule. In both 78 C 2675 and 79 C 311, plaintiff seeks civil penalties and an order to cease and desist the alleged violations of the Rules.

The cause is presently before the court on defendants' motion to dismiss all claims against the individual corporate officers of Commonwealth Edison Company; to dismiss the claims based on defendants' failure to obtain operating permits required by Rule 103(b); to strike the request for civil penalties, and to dismiss the claims based upon defendants' alleged violations of Rules 203(g) and 202(b).

## I.

■ In ruling on defendants' motion in 79 C 311 to dismiss all claims against the individual corporate officers of Common-

wealth Edison Company on the ground that they are not subject to citizen's suits under Section 304 of the Clean Air Act, 42 U.S.C. § 7604, it is necessary to examine the language and intent of Congress in enacting that legislation. In pertinent part, Section 304 authorizes private parties to bring suit "against any person . . . who is alleged to be in violation of (A) an .emission standard or limitation under this chapter . . . ." 42 U.S.C. § 7604(a)(1). Section 302(e) of the Act defines the term "person" to include "an individual, corporation, partnership, . . . political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof." 42 U.S.C. § 7602(e).

Defendants contend that unlike Section 113 of the Act, which expressly authorizes the Administrator of the United States Environmental Protection Agency [hereinafter "E.P.A."] to bring actions against responsible corporate officers of companies that have violated the Act, the deliberate omission of responsible corporate officers from the definition of "person" contained in Section 302(e) evinces Congress' intent not to allow corporate officers to be named defendants in suits of this type. Specifically, Section 113(c)(3) states that *"[f]or purpose of this subsection*, the term 'person' includes, *in addition to* the entities referred to in section 302(e), any responsible corporate officer." [Emphasis added].

In opposition to defendants' motion to dismiss, plaintiff argues that the individual corporate officers of Commonwealth Edison are proper parties to a citizen's suit brought under Section 304, since an "individual" is included within the definition of "person" contained in Section 302(e). Plaintiff further argues that the regulations which were allegedly violated contemplate suits against corporate officers, in that each regulation expressly provides that "no person shall cause or allow" a violation of an emission standard or limitation [2] and it is the individ-

---

**2.** For example, Rule 202(b) of the Rules and Regulations provides that "[n]o person shall cause or allow the emission of smoke or other

particulate matter into the atmosphere of an opacity greater than 30 percent."

ual corporate officers who direct the actions of the corporation, thereby causing and allowing the alleged violations of emission standards or limitations. Finally, plaintiff argues that under Illinois law, a responsible corporate officer can be sued for pollution caused by his company;[3] and since the Illinois Pollution Control Board's Rules and Regulations constitute its federally approved implementation plan, the liability allowable under state law is incorporated in a citizen's suit under Section 304 of the Clean Air Act. Thus, plaintiff asserts that the corporate officers are amenable to suit, irrespective of the language of Section 113(c)(3).

In the absence of any case authority to the contrary, the court is unwilling to disregard what it considers to be the clear intent of Congress to exempt individual corporate officers from liability under citizen's suits of this type. The express application to corporate officers of Section 113 of the Clean Air Act militates against bringing such individuals within the ambit of Section 304 of the Act in which such express inclusion is lacking. For this reason, the individual corporate officers are dismissed as defendants in case No. 79 C 311.

## II.

Defendant Commonwealth Edison has moved to dismiss the claims in both actions based on its failure to obtain operating permits required by Rule 103(b), on the ground that the permit requirement is not "an emission standard or limitation" with which compliance can be compelled through a citizen's suit authorized by Section 304 of the Clean Air Act. It therefore contends that the court lacks authority to enforce Rule 103(b).

3. Illinois does not expressly authorize a suit against responsible corporate officers, but defines "person" as "any individual, corporation, partnership, firm, association . . . or any legal successor, representative, agent, or agency of the foregoing. Rule 101, Illinois Pollution Control Board Rules and Regulations, Chapter 2: Air Pollution.

4. The only permits which are mandated by the Clean Air Act are those associated with the construction of stationary sources of emission.

The terms "emission limitation" and "emission standard" are defined in Section 302(k) of the Act.

(k) The terms "emission limitation" and "emission standard" mean a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction.

Defendant contends that the plain language of this definition indicates that a permit requirement is not an "emission standard or limitation," since obtaining such a permit does not limit the "quantity, rate, or concentration of emissions;" nor does it "assure continuous emission reduction." Defendant also argues that since there is no federal requirement that a state adopt such a permit system,[4] this omission from the mandatory federal plan set forth in Section 110(a)(2)(B) is a clear indication that a permit requirement is not an "emission standard."

In opposing defendant's motion to dismiss, plaintiff relies upon Section 302(k) of the Act, and upon Section 304(f) which states in relevant part:

For purposes of this section, the term "emission standard or limitation under this chapter" means—

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, . . .

Plaintiff argues that the permit system, established by the Illinois Environmental Protection Agency as the core of its State

*See* Section 110(a)(2)(D), 42 U.S.C. § 7410(a)(2)(D). Notably, virtually all states have a permit requirement similar to the Illinois Plan and use of such a permit system has been encouraged by the E.P.A. *See Hancock v. Train*, 426 U.S. 167, 184 n. 45, 96 S.Ct. 2006, 2015 n. 45, 48 L.Ed.2d 555 (1976); *Train v. Natural Resources Defense Counsel*, 421 U.S. 60, 68–69, 95 S.Ct. 1470, 1476, 43 L.Ed.2d 731 (1975).

Implementation Plan of the Clean Air Act,[5] is a requirement which limits the quantity, rate, or concentration of emissions, since no emissions are allowed unless a permit is obtained and no permit can be obtained unless the applicant demonstrates compliance with the emission requirements of the State Implementation Plan. As plaintiff further notes, the issuance of a permit can be made contingent upon, for example, the emission source operating at less than full capacity in order to keep emissions within the prescribed standards, or the maintenance of the equipment creating the emission in such a way as to reduce the emission to a level that complies with the standards. Thus, plaintiff asserts that the permit requirement, by mandating a particular standard of performance for an emission source, constitutes "an emission standard or limitation" within the meaning of Section 304(f).[6]

The court has considered these arguments in light of the overall purpose of the Clean Air Act, which is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." Section 101(b)(1), 42 U.S.C. § 7401(b)(1). In general terms, the Act mandates that primary and secondary ambient air quality standards be established by the E.P.A., but expressly reserves to the states the primary responsibility for assuring air quality within their own boundaries.

*See* Section 107(a), 42 U.S.C. § 7407(a); *Train v. Natural Resources Defense Council*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975). Pursuant to this mandate, each state must adopt "emission limitations, schedules, and timetables for compliance with such limitations, and such other measures as may be necessary to insure attainment and maintenance" of those primary and secondary ambient air quality standards. Section 110(a)(2)(B), 42 U.S.C. § 7410(a)(2)(B). In other words, the states are required to establish the specific rules to which operators of pollution sources are subject and the enforcement of which will result in ambient air meeting the established national standards. *Train v. Natural Resources Defense Council, supra.*

The term "emission standard" refers to standards establishing specific quantitative limits on emissions into the atmosphere by individual sources. *Natural Resources Defense Council v. Environmental Protection Agency*, 489 F.2d 390, 394 n. 2 (5th Cir. 1974), *rev'd on other grounds, sub nom., Train v. Natural Resources Defense Council*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975). The term "emission limitation" represents those measures within state implementation plans which are necessary to ensure attainment and maintenance of the national primary and secondary ambient air quality standards. *Citizens Association of Georgetown v. Washington*, 383 F.Supp. 136

---

5. *See* State Implementation Plan For the State of Illinois, Vol. 1, 5.0 Permit Program, p. 5–1 (April 1, 1979) wherein it states:

> The State of Illinois has a comprehensive air pollution control permit program administered by the IEPA. The permit program is the primary means by which the emission limitations and regulatory provisions for new, modified or existing stationary sources are enforced.
>
> \* \* \* \* \* \*
>
> Permits are granted for equipment if the equipment complies with the permit issuance standards contained in the regulations. These standards are based upon compliance with the regulations including compliance with emission limitations, conditions in previous permits, protection of ambient air quality, fulfillment of episode planning requirements, performance of adequate maintenance, etc.

6. Plaintiff also notes that the United States Court of Appeals for the Second Circuit has upheld the following requirements as emission standards or limitations in two related cases:

1. A reduction in business parking.
2. A selective ban on taxi cruising.
3. Tolls on bridges for car traffic.
4. Restrictions on night time freight movement.
5. Inspection of cars, trucks and taxis.
6. Mechanic training.
7. Enforcing existing traffic regulations.
8. Traffic management.
9. Increased express bus service.
10. Retrofit of trucks.

*See Friends of the Earth v. Carey*, 535 F.2d 165, 171 nn. 7, 8 (2d Cir. 1976); *Friends of the Earth v. Carey*, 552 F.2d 25, 28 n. 1 (2d Cir. 1977).

(D.C.1974). It refers to any type of control designed to reduce emissions into the air and includes a number of regulatory devices, ranging from regulations limiting the operation of emission sources to economic incentives aimed at inducing the voluntary reduction of emissions. *Natural Resources Defense Council v. Environmental Protection Agency, supra; League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d 1164, 1168–69 n. 5 (9th Cir.) *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979).

■ In view of the foregoing, the court concludes that the operating permit requirement here in question is an emission limitation within the meaning of Section 304(f) of the Clean Air Act. It is reasonably designed to ensure compliance with emission standards, as well as attainment and maintenance of the national ambient air quality standards. The court therefore holds such a permit requirement enforceable under Section 304(a)(1) of the Act against any violator thereof, and consequently denies defendant's motion to dismiss Count I of both complaints.

### III.

Defendant has moved to strike plaintiff's request for civil penalties on the ground that Section 304 of the Clean Air Act does not authorize the assessment of damages or a money penalty to punish non-compliance with Illinois Environmental Protection Agency regulations. Defendant contends that in a citizen's suit brought under Section 304, the court is empowered only to order compliance with the emission standards or limitation sought to be enforced.[7] Although the Administrator of the E.P.A. is expressly authorized under the penalty provisions of Section 113 of the Act to seek civil penalties of up to $25,000 per day of violation,[8] defendant argues that the omission of similar authorization language in Section 304 clearly indicates that Congress did not intend a money penalty to be available to private plaintiffs under that section.

Plaintiff opposes the motion to strike on the ground that Illinois' Environmental Protection Act provides for the imposition of civil penalties for any violation of the Illinois Pollution Control Board's Rules and Regulations, *see* Ill.Rev.Stat. ch. 111½, § 1042, and insofar as these Rules and Regulations also constitute Illinois' federally approved implementation plan, that the penalty provision is also incorporated in the enforcement scheme of Section 304.[9] Specifically, plaintiff asserts that Congress, through Section 304 of the Clean Air Act, vested federal courts with jurisdiction to enforce state causes of action arising from violations of emission standards or limita-

7. In pertinent part, Section 304(a), 42 U.S.C. § 7604(a) provides:
   The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order [issued by the Administrator or the State with respect to such standard or limitation], or to order the Administrator to perform such act or duty, as the case may be.

8. In addition to the specific penalty provision, Section 113(b), 42 U.S.C. § 7413(b) also provides:
   [the district court] shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty and to collect any noncompliance penalty [and nonpayment penalty] owed . . .

9. The court notes that it is presently unclear from the language of the penalty provision of Ill.Rev.Stat. ch. 111½, § 1042 whether a state court has the authority to impose civil penalties or whether that authority is vested solely in the Illinois Pollution Control Board. There is persuasive dicta in *City of Waukegan v. Pollution Control Board,* 57 Ill.2d 170, 184, 311 N.E.2d 146, 153 (1974) supporting the latter interpretation.
   Illinois courts that have construed the penalty provision of ch. 111½, § 1042 have held that the Illinois Pollution Control Board's discretionary power to impose civil penalties is not to be invoked for punishment but only to aid in enforcement of the Act. *See Southern Illinois Asphalt Co. v. Pollution Control Board,* 60 Ill.2d 204, 326 N.E.2d 406 (1975); *Monmouth v. Pollution Control Board,* 57 Ill.2d 482, 313 N.E.2d 161 (1974); *Harris-Hub Co., Inc. v. Pollution Control Board,* 50 Ill.App.3d 608, 8 Ill.Dec. 685, 365 N.E.2d 1071 (1st Dist. 1977).

tions and to provide such relief from those violations as is authorized by the state.[10]

■ The court concludes that neither the plain language nor the legislative history of Section 304 can support the broad construction which plaintiff seeks to have placed thereon. Nothing in the statutory grant of jurisdiction authorizes the imposition of either civil penalties or such sanctions as state law might allow. The remedy under Section 304 is framed in terms of suits for enforcement of federally approved emission standards or limitations, and it does not encompass the assessment of civil penalties. *See People of the State of California v. Department of the Navy*, 431 F.Supp. 1271, 1283 (N.D.Cal.1977);[11] *see also* G. Steinberg, *Is the Citizen Suit a Substitute for the Class Action in Environmental Litigation? An Examination of the Clean Air Act of 1970 Citizens Suit Provision*, 12 San Diego L.Rev. 107, 141–43 (1974). The court is therefore unwilling to expand the remedies available under Section 304 to include civil penalties, irrespective of the fact that Illinois law provides for such penalties; defendant's motion to strike plaintiff's claims for civil penalties is granted.

## IV.

Defendant claims that plaintiff is barred from attempting to enforce Rule 203(g) of the Illinois Pollution Control Board Rules and Regulations because that Rule was vacated by an Illinois Appellate Court in *Ashland Chemical Co. v. Pollution Control Board*, 64 Ill.App.3d 169, 21 Ill.Dec. 121, 381 N.E.2d 56 (3d Dist.1978); *accord, Illinois State Chamber of Commerce v. Pollution Control Board*, 67 Ill.App.3d 839, 24 Ill.Dec.

55, 384 N.E.2d 922 (1st Dist.1978), *appeal dismissed*, 78 Ill.2d 1, 34 Ill.Dec. 334, 398 N.E.2d 9 (1979); and that a decision of a state court invalidating an emission limitation on state law grounds effectively bars its enforcement, at least until a replacement can be promulgated. Additionally, defendant contends that Rule 202 of the Illinois Pollution Control Board Rules and Regulations is unenforceable because it is merely an administrative complement of Rule 203(g) and, thus, the invalidity of Rule 203(g) renders Rule 202 unenforceable. Without addressing the issue of whether Rule 202 is an administrative complement of Rule 203(g), the court finds that disposition of both motions to dismiss rests on a determination of whether Rule 203(g) is enforceable.

The current enforceability of Rule 203(g) can perhaps best be understood by an examination of its procedural history. Rule 203(g)(1) provides a numerical limit on the emission of particulate matter from sources such as defendant's Kincaid and Waukegan stations. In 1972, the Illinois Pollution Control Board adopted Rule 203 pursuant to the Illinois Environmental Protection Act of 1970, Ill.Rev.Stat. ch. 111½, § 1001, *et seq.* Rule 203(g) was submitted to the Administrator on January 31, 1972 as part of the Illinois State Implementation Plan. On May 31, 1972, pursuant to § 110(a)(2) of the Clean Air Act and 40 C.F.R. Part 51, the Administrator substantially approved this submission. The validity of Rule 203(g)(1) was challenged in 1974 in *Commonwealth Edison Co. v. Pollution Control Board*, 25 Ill.App.3d 271, 323 N.E.2d 84 (1974) on the ground that the Board had not followed the

10. Plaintiff distinguishes the specific grant of authority for civil penalties in Section 113 actions because under that section the Administrator seeks to enforce *federal law* whereas under Section 304 the contours of relief are to be determined by the various *state implementation plans.*

11. In *People of State of California v. Dept. of the Navy, supra*, plaintiffs sought civil penalties of $500 per day for air pollution violations caused by the Navy. The court's refusal to

hold the federal officials and agency liable for civil penalties was predominantly based on the principles of sovereign immunity. The court relied on the Supreme Court's decision in *Missouri Pacific R. R. Co. v. Ault*, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921) where the Court held that in the absence of specific statutory provision for penalties, the federal government may not be held liable for damages "which do not merely compensate but punish." *Id.* at 564, 41 S.Ct. at 597.

correct procedures in promulgating it.[12] The Illinois Supreme Court affirmed the Appellate Court's decision, reversing the Board's adoption of Rule 203(g)(1) and remanding the cause with instructions to the Board to validate Rule 203(g)(1) according to Section 27 of the Illinois Environmental Protection Act or to prepare a proper rule as a substitute. *Commonwealth Edison Co. v. Pollution Control Board*, 62 Ill.2d 494, 343 N.E.2d 459 (1976).

On August 2, 1976, pursuant to Sections 110(a)(2)(H) and 110(c) of the Clean Air Act, the E.P.A. Regional Administrator issued a Notice of Deficiency requesting that a revision of the Illinois State Implementation Plan be developed or that appropriate action be taken to correct the deficiency noted by the Illinois courts. In the Notice of Deficiency the Regional Administrator expressly stated that "[a]ll of the current applicable implementation plan remains in effect until the plan revision is submitted by the State to EPA and is approved by EPA or until EPA promulgates substitutes or additional regulations." 41 Fed.Reg. 32304 (August 2, 1976). On July 7, 1977, the Illinois Pollution Control Board issued an order revalidating Rule 203(g)(1), subject to a public comment period running 45 days from the date of the order. On September 27, 1978, Rule 203(g)(1) was again challenged in *Ashland Chemical Co. v. Pollution Control Board, supra.* The Illinois Appellate Court held that the Board did not follow the Illinois Supreme Court's directions for validating Rule 203(g)(1) in *Commonwealth Edison Co., supra*, since it did not consider intermittent control systems, did not have an economic study prepared, nor did it provide an opportunity for Ashland or others to respond to the Marder Report, a study which the Board had commissioned. The court vacated Rule 203(g)(1) and remanded it to the Board for proceedings consistent with the Illinois Supreme Court's directions in *Commonwealth Edison Co., supra*.

On July 12, 1979, the E.P.A. Regional Administrator again issued a Notice of Deficiency requesting that a revision of the Illinois plan be developed or other appropriate action taken to validate Rule 203(g)(1) in accordance with the instructions of the Illinois Supreme Court in *Commonwealth Edison Co., supra.* 44 Fed.Reg. 40724 (July 12, 1979).

Plaintiff maintains that because Rule 203(g)(1) was originally adopted as part of the Illinois Implementation Plan, and the Administrator's approval of the plan was subsequently sustained by the Seventh Circuit Court of Appeals in *Indiana & Michigan Electric Co. v. Environmental Protection Agency*, 509 F.2d 839 (7th Cir. 1975), it is enforceable against defendant in a federal forum notwithstanding its invalidation by the Illinois courts. Specifically, plaintiff asserts that once the Administrator approved Rule 203(g)(1) as part of the Illinois' Plan pursuant to the provisions of Section 110(a) of the Clean Air Act, 42 U.S.C. § 7410(a), the controlling law with respect to its implementation, enforcement and maintenance in Illinois under the federal enactment became fixed; and that, thereafter, it could only be revised, suspended, modified or postponed in accordance with the strict requirements of Section 110(i), 42 U.S.C. § 7410(i). Therefore, plaintiff argues that the unilateral action of the state in vacating Rule 203(g)(1) has no effect on its enforceability.

Section 110(i) provides:

Except for a primary nonferrous smelter order under section 119, a suspension under section 110(f) or (g) (relating to emergency suspensions), an exemption under section 118 (relating to certain Federal facilities), an order under section 113(d) (relating to compliance orders), a plan promulgation under section 110(c), or a plan revision under section 110(a)(3), *no order, suspension, plan revision, or other action modifying any requirement of an applicable implementation plan may be taken with respect to any stationary*

---

**12.** The Appellate Court also invalidated Rules 204(a)(1) and 204(c)(1)(A). Neither of these Rules are involved in the present action.

*source by the State or by the Administrator.* (emphasis supplied)

The court finds this provision controlling in this instance. As the Second Circuit observed in *Friends of the Earth v. Carey*, 535 F.2d 165, 169 (1976):

Since abatement and control of air pollution through systematic and timely attainment of the air quality standards is Congress' overriding objective, a plan, once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state. Modifications are permitted by the Act only cautiously and grudgingly. The EPA is authorized to approve revisions of the original plan, . . . § 110(f), provided it 'can satisfy the stringent conditions' imposed by that provision, *Train v. N. R. D. C.*, 421 U.S. 60, 90, 95 S.Ct. 1470, 1487, 43 L.Ed.2d 731, 752 (1975). In all other cases full compliance with the plan is mandated. *See id.* at 89–90, 95 S.Ct. at 1486–1487, 43 L.Ed.2d at 751–752.

In accordance with the foregoing statement of the law, the Regional Administrator's affirmance thereof, *see* 41 Fed. Reg. 32304 (Aug. 2, 1976), and the explicit provisions of Section 110(i), *supra*, it is the opinion of the court that Rule 203(g), as adopted in the State of Illinois Implementation Plan and approved by the Administrator, is and will continue to be enforceable until such time as a revision is submitted to the Administrator for approval pursuant to Section 110(a)(3) of the Clean Air Act, 42 U.S.C. § 7410(a)(3).

It should be noted, however, that defendant asserts the unenforceability of the claim in 79 C 311 which plaintiff bases on alleged violations of Rule 203(g)(1)(B) as applied to its Kincaid station because a variance from the Rule was granted in *Commonwealth Edison Co. v. Environmental Protection Agency*, Pollution Control Board Docket 77–316 (July 20, 1978). Defendant points out that Rule 203(g) was adopted by the Board under its authority derived from the Environmental Protection Act of Illinois, Ill.Rev.Stat. ch. 111½, § 1001, *et seq.*, (1977), which Act authorizes the Board to grant variances from its rules and regulations in cases of "arbitrary and unreasonable hardship." Ill.Rev.Stat. ch. 111½, § 1035 (1977). The variance was to extend to October 31, 1978, subject to certain conditions which are not at issue in the case at bar. Significantly, however, the Board's order provided that "[t]his variance shall terminate July 1, 1979 if its terms have not previously become part of the Illinois State Implementation Plan under the Federal Clean Air Act."

Notwithstanding the fact that the variance was never approved by the Administrator of the United States E.P.A., defendant contends that because plaintiff effectively participated, through the Attorney General, in the Board's adjudicatory proceedings that resulted in the granting of the variance, plaintiff is now estopped from collaterally attacking the validity of the variance order through its attempt to enforce Rule 203(g)(1)(B).[13] Defendant also argues that the variance order finally adjudicates in its favor the issue of whether the application of Rule 203(g) to the Kincaid station would be arbitrary, unreasonable and, therefore, unlawful.

**13.** In support of this contention, defendant maintains that matters finally adjudicated in an administrative proceeding may not be attacked elsewhere, citing *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). There, the Court stated: "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* at 422, 86 S.Ct. at 1560.

The court, however, does not construe the instant action as a collateral attack on the validity of the Board's variance order. Rather the sole issue before the court is whether the Board's variance order constitutes a revision of the Illinois State Implementation Plan which would preclude plaintiff's suit for enforcement of Rule 203(g). For reasons stated elsewhere in this opinion, the court concludes that, without the approval of the Administrator of the United States E.P.A. pursuant to Section 110(a)(3) or (f) of the Clean Air Act, the Board's variance order does not revise the Illinois Implementation Plan and, thus, does not bar enforcement of Rule 203(g).

■ Plaintiff on the other hand, urges the court to find that the variance granted by the Board does not bar enforcement of Rule 203(b) against defendant's Kincaid station because the variance was not approved by the Administrator of the United States E.P.A. Plaintiff asserts, and the court agrees, that the only procedural routes available to modify a federally approved implementation plan are a revision pursuant to Section 110(a)(3) of the Clean Air Act, 42 U.S.C. § 7410(a)(3), or a postponement pursuant to Section 110(f) of the Act, 42 U.S.C. § 7410(f), both of which expressly require the Administrator's approval. The Supreme Court, in *Train v. Natural Resources Defense Council*, 421 U.S. 60, 92, 95 S.Ct. 1470, 1488, 43 L.Ed.2d 731 (1975), pointed out that:

> A polluter is subject to existing requirements until such a time as he obtains a variance, and variances are not available under the revision authority until they have been approved by both the State and the Agency. Should either entity determine that granting the variance would prevent attainment or maintenance of national air standards, the polluter is presumably within his rights in seeking judicial review. This litigation, however, is carried out on the polluter's time, not the public's, for during its pendency the original regulations remain in effect, and the polluter's failure to comply may subject him to a variety of enforcement procedures.

Additionally, the Court expressly included citizen's suits in referring to enforcement procedures which can be pursued prior to the approval of a variance by both the state and the Administrator. *Id.* at 93 n. 27, 95 S.Ct. at 1488 n. 27.

The rationale for requiring strict compliance with the revision procedures of the Clean Air Act was articulated in *Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 511 F.2d 809 (D.C. Cir. 1975), a case factually similar to the one at bar. In holding that revisions are not to be considered a part of a state implementation plan until approved by the Administrator, the court reasoned: "If unilateral state action served to relax its implementation schedule pending EPA approval, any state could sidestep the crucial limitations on the revision procedure and undermine the national program of air quality improvement." *Id.* at 813.

■ Thus, while the Board's order granting a variance to defendant's Kincaid station was based on a finding that application of the Rule would be arbitrary and unreasonable, "the ultimate arbiter of the propriety of any particular variance is and must be the [Administrator of the] EPA" *National Resources Defense Council v. United States Environmental Protection Agency*, 507 F.2d 905, 914 (9th Cir. 1974). *See Getty Oil Co. (Eastern Operations) v. Ruckelshaus*, 467 F.2d 349, 358 (3d Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 259 (1973).

■ It, therefore, appears well established that until a variance is sanctioned by the Administrator, any source operating in contravention of a federally approved implementation plan under the Clean Air Act is subject to an enforcement proceeding. *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 478 F.2d 875, 886–88 (1st Cir. 1973). Accordingly, defendant's motion to dismiss the claims based upon Rule 203(g) and 202 is denied.

So ordered.