No. 1-04-0551

THE CITY OF CHICAGO,                    )       Appeal from the
                                        )       Circuit Court of
                Plaintiff-Appellant,    )       Cook County.
                                        )
        v.                              )       No. 01 M1 400061
                                        )
OLD COLONY PARTNERS, L.P.,              )       Honorable
                                        )       Ann Houser,
                Defendant-Appellee.     )          Judge Presiding.

JUSTICE MURPHY delivered the opinion of the court:

Plaintiff City of Chicago City filed suit against defendant Old Colony Partners, L.P. Old Colony .[1] In its original and amended complaints, the City alleged several violations of the Chicago Municipal Code Code by Old Colony. In particular, the City claimed Old Colony failed to keep the exterior walls of the 111-year-old landmark Old Colony Building located at 35-39 West Van Buren Street 400-41 South Plymouth Court 407 South Dearborn Street, Chicago, Illinois Building , in sound condition and repair. The City sought daily fines for these alleged violations of the Code pursuant to section 13--12--040 of the Code. Chicago Municipal Code § 13--12--040 amended November 10, 1994 . The allegations remaining for the bench trial were that defendant had violated, and continued to violate, sections 13--196--037 and 13--196--530 b and e of the Code. See Chicago Municipal Code § 13--196--037 amended February 10, 1999 , §§ 13--196--530 b , e 1990 . On both issues, the trial court accepted and entered of record Old Colony's proposed findings of fact and conclusions of law and entered judgment in favor of defendant.

_____

[1]The City's complaint and amended complaint named additional defendants with interests in the subject building; however, Old Colony is the only named defendant-appellant and will be the sole party referred to in this opinion.

The City has framed this appeal solely around the issues with respect to application of sections 13--196--530 b and e of the Code. The City contends that the trial court misinterpreted the Code, in particular, the elements of a violation of sections 13--196--530 b and e of the Code. See Chicago Municipal Code §§ 13--196--530 b , e 1990 . In addition, the City argues that notice is not required before the mandatory daily fines set forth in the Code are imposed and that abatement efforts in attempted compliance with the Code do not constitute an affirmative defense. The City argues that the trial court's findings of fact in favor of Old Colony were against the manifest weight of the evidence with respect to sections 13--196--530 b and e . As part of this argument, the City argues that the trial court improperly admitted and considered hearsay evidence presented by Old Colony. For the reasons that follow, we affirm the decision of the trial court.

## I. BACKGROUND

The City filed a two-count complaint on January 2, 2001, alleging violations of the Code by Old Colony with respect to the exterior walls of the Building. Based on observations of the Building on July 10, 2000, the City sought monetary fines and injunctive relief against Old Colony. In particular, the City claimed Old Colony failed to keep the exterior walls of the Building in sound repair and file certain required maintenance and repair reports. The City claimed Old Colony faced daily accrual of fines for each day the violations of the Code existed.

Old Colony did not receive written notice of these alleged violations nor did it receive service of the City's complaint. Rather, Old Colony voluntarily entered an appearance in the case on February 9, 2001. Old Colony next filed its answer on June 1, 2001, asserting two affirmative defenses failure to state a cause of action and substantial compliance. The City filed a motion to dismiss the affirmative

defenses pursuant to section 2-615(a) of the Illinois Code of Civil Procedure. 735 ILCS 5/2-615(a) (West 2000). On October 22, 2001, the trial court granted the City's motion and gave the City leave to file an amended complaint.

On November 8, 2001, the City filed its amended complaint. The amended complaint contained six counts including the original alleged violations and additional alleged violations observed during an October 22, 2001 investigation of the Building. The City again sought injunctive relief and daily fines for the violations. As noted above, prior to trial, all but two claims were dismissed by agreement of the parties. The allegations remaining for trial were that defendant had violated, and continued to violate, sections 13--196--037 and 13--196--530(b) and (e) of the Chicago Municipal Code. See Chicago Municipal Code § 13-196-037 (amended February 10, 1999), §§ 13--196--530(b), (e) (1990).

The City alleged in Count I that, on July 10, 2000, unsafe conditions existed on all exterior walls of the building in violation of section 13--196--037 of the Code. Chicago Municipal Code § 13--196--037 (amended February 10, 1999). Specifically, the City claimed "vertical cracks were observed on all elevations; sheet metal was observed holding loose bricks over windows; large fractures were observed over north and west elevation bay windows; large limestone slabs were observed without mortar holding them in place, a dangerous and hazardous condition; and bay windows and sills appeared loose and partitions; upper sections appeared loose, with fractured parapet sections of terra cotta appearing loose and shifter, a dangerous and hazardous condition."

Count II was brought pursuant to section 13--12--040 of the Code. Chicago Municipal Code § 13--12--040 (amended November 10, 1994). The City sought the assessment of daily

3

fines under that section, as of October 22, 2001, for unsafe conditions in violation of sections 13--196--037 and 13--196--530 b and e , that existed due to defendant's failure to repair exterior walls of the building. The City alleged this was evidenced by the presence of temporary shoring of terra-cotta window headers. The City sought injunctive relief and fines in the amount of 1.945 million under sections 13--196--038 and 13--12--040 of the Code for the alleged violations. Chicago Municipal Code § 13--196--038 amended December 15, 2004 , § 13--12--040 amended November 10, 1994 .

## A. The Bench Trial

At the start of the bench trial on April 2, 2003, the City presented its only witness, City building inspector Julio Montilla. Montilla testified that he had been a building inspector for the City of Chicago for over six years. Montilla stated that he was the only inspector for the City on the Building and had inspected the Building on February 13, 2001, October 22, 2001, and March 27, 2003. Montilla's testimony centered around his descriptions and discussions of photographs taken of the Building on February 13, 2001, and October 22, 2001, which were entered into evidence as two group exhibits by the City. No pictures were taken during the 2003 inspection.

Montilla testified generally regarding the condition of the exterior walls of the Building and what was depicted in the photographs. Montilla regularly provided inconclusive descriptions of the location of each picture and did not offer specifics as to how the Code was violated by Old Colony. Repeatedly, Montilla stated that conditions such as missing terra-cotta or bricks or cracks in limestone were caused either naturally or were removed by human activity. Further, for each of these times, Montilla stated that resulting cracks were covered with plywood, caulk or roofing cement as temporary repairs.

4

On cross-examination, Montilla testified that he did not see any pieces of terra-cotta fall. Montilla was aware of scaffolding hung on the Building during the time in question and that structural engineers had been inspecting the Building for Old Colony. He noted that structural engineers are required to remove dangerous conditions and report them to the City. Montilla testified that he reviewed the critical examination report for the Building on file with the City. Further, Montilla stated that he did not receive any reports of dangerous or hazardous conditions at the Building.

Old Colony presented Marilyn Fornell, property manager for the Building since July 2001, as its sole witness. As part of her duties, Fornell reviewed the City's complaint and the work completed at the Building pursuant to contract. Several documents were presented and admitted, over the City's objections, as business records during Fornell's testimony. Included among these exhibits were the January 19, 2001 contract between Old Colony and architect and engineer firm Kellermeyer Godfryt Hart, P.C. KGH for completion of a critical examination report of the Building, the critical examination report dated April 16, 2001 contracts with KGH dated June 26, 2001, and December 26, 2001, for initial and final maintenance and repair of the Building to be completed by KGH and Reliable Building Systems, Inc. Reliable permits and permit applications for the proposed work and for canopies around the building and a letter dated January 9, 2002, from KGH to Old Colony noting temporary maintenance was completed to assure short-term weather resistance and that no dangerous or hazardous conditions were found on the Building.

Fornell testified that, she worked closely with KGH and reviewed work on the Building as it was completed, personally inspecting the finished work. She testified that all reports and contracts were maintained on file, as required by City ordinance and as part of her typical business practice. Fornell

5

testified to the work KGH and Reliable completed on the Building as detailed in the critical examination report and contracts for further work. Fornell did not testify as to how the KGH reports were completed. In sum, Fornell testified that intermediate maintenance was performed, the building would have to be cleaned, and special materials and permits would be required to complete maintenance in conformance with the building's landmark status.

Following receipt of the City's amended complaint, Fornell requested KGH and Reliable review the complaint. Fornell was assured the Building was watertight and did not pose a hazard or danger. Fornell further testified that she did not receive any complaints of, nor did she observe, wetness in the Building due to any of the alleged violations. Fornell's testimony and the exhibits were consistent with Montilla's testimony that portions of terra-cotta, bricks and limestone were removed and temporarily shored up and sealed.

As requested by the trial court, both parties submitted proposed findings of fact and conclusions of law. On July 29, 2003, without elaboration, the trial court accepted in full Old Colony's proposed findings of fact and conclusions of law. In extraneous statements, the trial court noted that it found the City's position troublesome in this case and welcomed guidance from this court regarding the issues of the case.

### The City's Posttrial Motion

On September 30, 2003, the City filed a motion to reconsider filed pursuant to section 2-1203(a) of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1203(a) (West 2004). The City argued that the trial court's findings were against the manifest weight of the evidence. The City claimed that as the evidence identified the Building as still in poor condition and the uncontroverted evidence

presented by Montilla was to the same effect, the court should reverse its decision. The City again claimed the letters and reports entered into evidence by Old Colony were inadmissible hearsay and improper to consider.

Further, the City argued the trial court was incorrect in finding the City sought fines totaling 1.945 million. Rather, the City stated it was seeking 756,000 for the two claimed violations. The City further offered to limit fines sought to those alleged violations of section 13-196-530 of the Code for a total of 378,000. On January 23, 2004, the trial court granted the City's motion for reconsideration and denied its request to modify the final order. The City now appeals solely its claim in count II that Old Colony violated sections 13--196--530 b and e.

## II. ANALYSIS

The City's claims on appeal pertain to the trial court's interpretation of the Code, and the facts are largely undisputed therefore, our re-view is de novo. Eychaner v. Gross, 202 Ill. 2d 228, 252 2002. Factual determinations by the trial court will stand unless contrary to the manifest weight of the evidence. North Avenue Properties, L.L.C. v. Zoning Board of Appeals, 312 Ill. App. 3d 182, 184 2000. This requires a finding that all reasonable people would find the opposite conclusion is clearly apparent. North Avenue Properties, L.L.C., 312 Ill. App. 3d at 184. We may uphold a trial court's decision on any basis appearing in the record. Arangold Corp. v. Zehnder, 187 Ill. 2d 341, 359-60 (1999).

We first address the trial court's interpretation of the Code. Second, we turn to the evidentiary issues presented by the City and application of the facts of this case to the Code.

7

## A. The Trial Court's Interpretation of the Chicago Municipal Code

If an ordinance is clear and unambiguous, it must be interpreted without the analysis of its construction. La Salle National Bank v. City Suites, Inc., 325 Ill. App. 3d 780, 786 2001 . However, if there is any ambiguity, we follow the same rules for the analysis of a municipal ordinance as we do under a statutory construction analysis. In re Application of the County Collector, 132 Ill. 2d 64, 72 1989 . The fundamental rule of statutory construction is to give effect to the intent of the legislature. People ex rel. Ryan v. Agro, Inc., 214 Ill. 2d 222, 226 2005 . Giving the statutory language its plain meaning is the best means of ascertaining legislative intent. Agro, 214 Ill. 2d at 226. In doing so, each word, clause, or sentence should be given its reasonable meaning and not be discarded as superfluous. Quad Cities Open, Inc. v. City of Silvis, 208 Ill. 2d 498, 508 2004 . The punctuation of a statute is to be considered and given weight unless, from inspection of the entire statute, it is clear it must be ignored to give effect to the legislature's intent. In re D.F., 208 Ill. 2d 223, 234 2003 .

The City argues that the trial court misinterpreted the Code several ways by accepting Old Colony's proposed conclusions of law. First, the City claims that the trial court misinterpreted the Code, in effect rendering the sound condition and repair requirement of section 13-196-530 superfluous. The City then argues that the trial court improperly interpreted the Code to allow defenses of building owner of lack of notice by the City prior to filing suit and compliance with the Code. We examine these claims in turn.

### 1. What Constitutes Violation of Sections 13-196-530 b and e

The City's first argument is that sections 13-196-530 b and e unambiguously require exterior walls and projections to be kept in sound condition and repair. These sections read

"The foundation, exterior walls, and exterior roof shall be substantially watertight and protected against rodents, and shall be kept in sound condition and repair

b Every exterior wall shall be free of holes, breaks, loose or rotting boards or timbers, and any other conditions which might admit rain, or dampness to the interior portions of the walls or to the exterior spaces of the dwelling.

e All cornices, rustications, quoins, moldings, belt courses, lintels, sills, oriel windows, pediments and similar projections shall be kept in good repair and free from cracks and defects which make them hazardous and dangerous." Chicago Municipal Code §§ 13--196--530 b , e 1990 .

The trial court found that the building must be found not to be substantially watertight or that a dangerous or hazardous condition exists for there to be a violation of section 13-196-530. In the conclusions of law accepted by the court, our decision in City of Chicago v. RN Realty, L.P., 357 Ill. App. 3d 337, 345-46 2005 , is cited as authority for this proposition. The City claims that, following the well-settled canons of construction, the plain meaning of the sections above unambiguously requires only that the building not be in sound condition and repair.

At oral argument, the City conceded that the court decides what is "sound" on a case-by- case basis. However, the City argues that "sound condition and repair" requirement is clear and unambiguous and

9

the trial court's position in this case renders the first sentence of the ordinance surplusage. Therefore, the City claims, the trial court's interpretation runs contrary to the plain meaning of the ordinance, rendering it meaningless, and, as such, is indefensible. *See* *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 11 (2001). Therefore, the City argues the decision in *RN Realty* was incorrect, and the dissent by Justice Quinn arguing that "sound condition and repair" was clear and unambiguous should control. *RN Realty*, 357 Ill. App. 3d at 350-52 (Quinn, J., dissenting).

*RN Realty* presented a fact pattern similar to this case. The majority determined that, based on the plain language of subsections (b) and (e), evidence that either water might be able to get into the building or the building was in an unsafe condition is required for a violation of section 13-196-530. *RN Realty*, 357 Ill. App. 3d at 344-45. However, the majority did not discuss, nor cite to, the prefatory phrase in that section, but only cited subsections (b) and (e). *RN Realty*, 357 Ill. App. 3d at 344. No statutory construction analysis was provided by the majority or Justice Quinn in his dissent. *RN Realty*, 357 Ill. App. 3d at 350 (Quinn, J., dissenting). Rather, Justice Quinn found, and the City now argues, the prefatory phrase clearly and unambiguously does not require proof the building admitted water or was dangerous and hazardous. *RN Realty*, 357 Ill. App. 3d at 350 (Quinn, J., dissenting). Ostensibly, this dispute as to the plain meaning of the statute evidences some ambiguity and merits further analysis of the Code.

We review the sections in question and the Code to determine the proper intent of the city council. It is clear to this court that section 13-196-530 vests great discretion in the finder of fact to determine whether a violation exists. The prefatory phrase of section 13-196-530 of the Code requires buildings to be kept in "sound condition and repair." However, that phrase is somewhat ambiguous,

granting the fact finder latitude in deciding whether the condition of the building merits fines or injunctive relief. Further, the subsections within this section of the Code suggest the city council intended to grant the fact finder further discretion.

The prefatory phrase of section 13-196-530 importantly does not end with a period, but with a colon. A colon serves as a major break in a sentence indicating that what follows is an elaboration, summation or interpretation of that which precedes. Each of the five subsections provided by the legislature ends with a period. Thus, each subsection is an elaboration on the opening phrase, distinct from the other subsections, as to what is required for either the roof, exterior wall or foundation of buildings in the City of Chicago. Therefore, the somewhat ambiguous "sound condition and repair" in the prefatory phrase receives some clarity from the five sentences that follow.

Both elaborations of subsections b and e are one sentence long. Each subsection contains an inclusive list of examples formed with the conjunction "and." The list in each subsection is immediately followed by a restrictive clause further defining the conditions that constitute a violation. Thus, for subsection b, only conditions "which might admit rain, or dampness" are to be considered unsound or in disrepair. Chicago Municipal Code § 13-196-530 b 1990 . For subsection e, the listed examples must be "kept in good repair and free from cracks and defects which make them hazardous and dangerous." Emphasis added. Chicago Municipal Code § 13-196-530 e 1990 . While these subsections offer some clarity, they still are hedged in very general terms such as "might" and "hazardous and dangerous." Therefore, it is within the discretion of the fact finder to determine if the conditions of the building are such that a fine or injunctive relief is necessary.

A review of the other sections of the Code further supports this analysis, also negating the City's fears that this interpretation renders the section meaningless. For example, review of the maintenance sections of the Code, including section 13--196--037 which was at issue at trial but waived by the City on appeal, identifies several sections that cover ongoing assurances that buildings are kept in sound condition and repair. *See* Chicago Municipal Code § 13--196--037 amended February 10, 1999. These sections indicate the city council's intention to have issues such as cracks or holes on exterior walls identified and repaired on a regular basis such that they do not become problematic or safety hazards.

In addition, it is important to note that section 13--196--530 is within the Code's provisions for residential buildings, made applicable to all buildings in 2001. *See* Chicago Municipal Code § 13--196--641 2001. It stands to reason that the residential sections were drafted by the city council with an eye to increased protections over commercial buildings. As such, this provision provides additional guidance to the City and the courts in determining violations greater than general "sound condition and repair" problems covered in earlier sections of the Code. While this cuts against the City's argument on this issue, it assists the City's argument that notice and compliance are not defenses to this type of violation.

2. Trial Court's Acceptance of Notice and Compliance Defenses

The City next argues that the trial court erred in finding the Code provides for defenses of notice or compliance with the Code. The City admits that the Code clearly requires notice and an opportunity to cure before injunctive relief is sought. *See* Chicago Municipal Code § 13--12--070 2005 § 13--20--040 September 13, 1989, § 13--96--860 amended September 13, 1989, § 13--196--037 amended August 30, 2000. However, the City has crafted its appeal solely

to the question of the alleged violations of sections 13--196--530(b) and (e) and the City's assessment of fines for those alleged offenses.

The City argues that the majority in *RN Realty* improperly held that the City has a general obligation to follow the Code provisions requiring it provide building owners notice and an opportunity to cure violations prior to seeking equitable and legal relief. *RN Realty*, 357 Ill. App. 3d at 349. The City argues that the provisions cited by the court in support of that finding, 13-12-070, 13-20-040, 13-96-860, and 13-196-037, are not applicable to this appeal. See Chicago Municipal Code § 13--12--070 (2005), § 13--20--040 (amended November 10, 1994), § 13--96--860 (amended September 13, 1989), § 13--196--037 (amended August 30, 2000). Rather, the City claims, the penalty provisions of sections 13--12--020 and 13--12--040 apply and mandate that daily fines shall be imposed for each violation without mention of notice or compliance. Chicago Municipal Code § 13--12--020 (April 12, 2000), § 13–12--040 (amended November 10, 1994). The City further notes that section 13--12--090 provides that remedies of the Code are not limiting, but cumulative. Chicago Municipal Code § 13--12--090 (amended July 21, 2004).

The City agrees with the position adopted by Justice Quinn in his dissent in *RN Realty* and argues it must be followed in this case. After the City's petition for rehearing and the first division of the First District's decision in *City of Chicago v. Cotton*, 356 Ill. App. 3d 1 (2005), Justice Quinn filed his dissent in *RN Realty*. *RN Realty* 357 Ill. App. 3d at 350. In *Cotton*, defendant landlord admitted to violations of sections 13--196--400, 13--196--410 and 13--196--430 of the Code, but claimed she complied with the Code and that should mitigate fines assessed

by the court. *Cotton*, 356 Ill. App. 3d at 2-4. The trial court agreed and levied a fine less than that mandated by section § 13--12--040 of the Code. *Cotton*, 356 Ill. App. 3d at 3. The first division of the First District of this court found that cooperation and compliance with the Code were not contemplated as mitigating factors in levying fines under section 13--12-040 and reversed and remanded the case to the trial court to enter a fine against the defendant within the range enunciated in the Code. *Cotton*, 356 Ill. App. 3d at 10-11. Accordingly, Justice Quinn dissented in *RN Realty*, stating *Cotton* provided clear guidance that notice and compliance are not defenses to violations of the Code and fines under 13-12-040. *RN Realty* 357 Ill. App. 3d at 351-52.

The City also argues that the Code, in and of itself, provides notice to building owners. The nature of the Code as a strict liability measure, the City claims, puts building owners on notice that buildings must be maintained in sound condition and repair or automatically face daily fines between 200 and 500. Further, the violations alleged in this case were not as a result of any activity mentioned in the Code requiring notice prior to bringing a civil action.

Old Colony argues that *RN Realty* controls and must be followed. The City counters that Old Colony responded to issues from the trial, but not involved in this appeal and its arguments with respect to count I of the complaint must be ignored pursuant to Supreme Court Rule 341 e 7 . Official Reports Advance Sheet No. 21 October 17, 2001 , R. 341 e 7 , eff. October 1, 2001. However, as discussed above and in *RN Realty*, analysis of the Code is helpful in understanding the city council's intent and the ruling in *RN Realty*. Old Colony therefore discusses in detail the various sections providing a notice or compliance defense in the Code.

As discussed in full above, several provisions within the Code require notice and an opportunity to cure violations. The maintenance, inspection and reporting requirements of the Code where these notice provisions may be found evidence a desire by the city council to establish a working relationship between the City and building owners to assure buildings are maintained in a safe and sound condition. It is important to note that the amended complaint at issue in *RN Realty* was brought pursuant to section 13--12--070 of the Code to impose fines for the alleged violations of sections 13-196-530 b and e . *RN Realty*, 357 Ill. App. 3d at 348-49, quoting Chicago Municipal Code § 13--12--070 2003 . That section, cited by the *RN Realty* majority, relates to requests for injunctive relief, not solely for fines. Filing its suit under that section, the City necessarily brought on a review of the various notice provisions in the Code and authority for the majority's opinion.

Due to the specific conditions that merit violations in sections 13-196-530 b and e , and the construction of the Code discussed in detail above, it appears clear the city council intended to provide further incentive to avoid conditions such as these via the strict liability assessment of fines. Presumably, if a building owner properly carried out its inspection and maintenance requirements, its building would not have deteriorated to the point of facing fine under subsections b and e . If it had, notice likely would have been provided explicitly by the City of Chicago under the aforementioned sections, or upon review of the Code or engineering professionals.

In this case, the City brought a claim pursuant to section 13--12--040 of the Code, not section 13--12--070, as in *RN Realty*. Unlike in *Cotton*, there is no admission of a violation, nor did the court find a violation. Section 13--12--040 does not provide any indication that notice is required or that compliance may mitigate against fines. We find that, for a claim brought under section 13-

12-040, if a violation is found by the court, fines are mandatory and not affected by a lack of notice or subsequent compliance. Accordingly, we must now determine whether a violation occurred.

### B. Application of the Facts and Testimony to the Code

Again, the trial court did not elaborate on its acceptance of Old Colony's findings of fact and conclusions of law. It was the City's burden at trial to prove by a clear preponderance of the evidence that Old Colony violated the ordinance. *See* RN Realty, 357 Ill. App. 3d at 345. Before we address whether the evidence comports with the trial court's findings, we first determine the admissibility of Old Colony's evidence and whether this evidence was properly considered, or needed, by the court.

### I. Admissibility of Critical Examination Report and Letters

A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion. Snelson v. Kamm, 204 Ill. 2d 1, 33 (2003). Likewise, credibility determinations are best left to the trial court, which is in a superior position to review the evidence, measure the witnesses in person and observe their demeanor. In re Marriage of Bates, 212 Ill. 2d 489, 516. A trial court abuses its discretion only when no reasonable person would agree with the trial court. Dawdy v. Union Pacific R.R. Co., 207 Ill. 2d 167, 177 (2003).

Several documents were admitted into evidence by the trial court under the business records exception of Supreme Court Rule 236, which states, in pertinent part

Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence

of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. 145 Ill. 2d R. 236 (a).

The reports and letters entered into evidence were prepared for Old Colony by KGH. Fornell testified to the findings of KGH, offered as proof of the matter asserted. Accordingly, the exhibits were hearsay and, to be considered by the trier of fact, must meet one of the exceptions to the bar on hearsay evidence. People v. Morrow, 256 Ill. App. 3d 392, 397 (1993).

The exceptions to the hearsay rule are well established in the law as providing indicia of reliability to overcome the presumption against hearsay statements. The rationale under the exception for business records is that businesses are motivated to keep records accurately and are unlikely to falsify records upon which they depend. Kimble v. Earle M. Jorgenson Co., 358 Ill. App. 3d 400, 414 (2005). Documents prepared under a statutory duty are not inadmissible as outside the business record exception merely because they are to be used in adversarial proceedings. In re Joseph S., 339 Ill. App. 3d 599, 608 (2003). Nor is a document inadmissible simply because it is prepared by a third party authorized to act for the business. Kimble, 358 Ill. App. 3d at 414. However, business records made in anticipation of litigation do not possess the same trustworthiness of other records prepared in the ordinary course of business. People v. Virgin, 302 Ill. App. 3d 438, 450 (1998).

Anyone familiar with the business and its procedures may testify as to the manner in which records are prepared and the general procedures for maintaining such records in the ordinary course of business. *Raithel v. Dustcutter, Inc.*, 261 Ill. App. 3d 904, 909 1994 Cook, J., specially concurring . The foundation requirements for admission of documents under this exception are that it is a writing or record made as memorandum of the event made in the ordinary course of business and it was the regular course of the business to make such a record at that time. *In re Estate of Weiland*, 338 Ill. App. 3d 585, 600 2003 . A lack of personal knowledge of the record does not affect the admissibility of the record, but may affect the weight of the evidence. *In re Estate of Weiland*, 338 Ill. App. 3d at 600.

Fornell testified that she was the property manager for the Building from July 2001 to date. She testified that she was familiar with the Code and had worked with programs for major repairs of landmarked buildings in her past duties as a property manager. Fornell testified that in July 2001 she retrieved the critical examination report prepared by KGH from Old Colony's files and reviewed the report. Fornell further testified that this report, and the other hearsay documents, were maintained on site in the ordinary course of business in files containing contracts, reports and other documents relating to the maintenance of the Building. Fornell stated that each document was either sent or received by Old Colony or the property management company. Although Fornell worked with the engineers and architects of KGH and oversaw some of the work completed, she could not testify to how the documents were generated. The trial court allowed the documents based on the foundation provided by Fornell.

The City contends that the trial court's admission was an abuse of discretion. Old Colony's exhibits 1 through 4, 6 through 11, and 14 were inadmissible hearsay. The City argues that the

18

documents, in particular the critical examination report and letters from KGH opining no dangerous conditions existed at the Building, were not business records, but prepared for litigation. The City claims the critical examination report was specifically prepared pursuant to the trial court's order of February 16, 2001. It claims the admission of these documents did not allow the City to cross-examine the maker of the record to determine how such opinions were formed and, thus, are inadmissible.

It is clear that KGH was contracted to complete the critical examination report prior to Old Colony's involvement and awareness with the instant litigation. The report was created by licensed professionals, is affixed with the registered stamp of the professional engineer, and was accepted by the City.

It is important to note that the City had access to these documents through its own files and witnesses and the discovery process. If each of the documents admitted into evidence was so troubling, it begs the question as to why a motion in limine was not filed by the City to remove the document entirely from the trial. Further, if the contents of the documents were troublesome, the City had every opportunity and right to depose or call the creators of the documents to the stand to question the information. In any event, in the face of all of the facts and testimony in this case, the court did not abuse its discretion in allowing the documents and affording the proper weight, if any at all, to them.

2. Trial Court Decision Was Not Against the Manifest Weight of the Evidence

With this background, we may now examine whether the facts were applied properly in this case. The City contends that, without the improperly admitted evidence, the testimony of its witness was uncontroverted and sufficient to prove by a clear preponderance of the evidence that Old Colony violated the ordinance. The City further argues that the plain language of the ordinance was not properly determined by

19

the court and only the conditions of deterioration and disrepair need be present for a violation. Therefore, the City argues, Old Colony itself offered evidence of violations and the trial court erred in finding that sections 13-196-530 b  and  e  were not violated.

As detailed above, sections 13-196-530 b  and  e  require conditions that might admit water into the building or create dangerous and hazardous conditions for a violation. Neither party presented evidence to meet these elements. Both parties clearly offered evidence that the Building was not only in need of maintenance, but undergoing inspection and maintenance during the time in question.

Contrary to the City's assertions, Montilla's testimony did not prove violations by the clear preponderance of the evidence for the period in question. Even if Old Colony had not presented any evidence, Montilla was so inconclusive in his testimony that the trial court had every reason to rule for Old Colony. Montilla repeatedly qualified his statements regarding the photographed deterioration of the exterior walls of the Building. He also repeatedly stated the conditions could have been caused by human action as temporary maintenance solutions, including sealing cracks or holes from the elements with caulk or roofing cement. Furthermore, Montilla testified that he read the critical examination report on file for the Building and noted that it did not identify any dangerous or hazardous conditions with respect to the Building.

Fornell testified that she had contracted KGH for the critical inspection work and follow-up maintenance activities. Fornell admitted that the completion of the work was well off schedule for completion and that canopies had remained around the building for the entire period in question. Even without the critical examination report and other hearsay evidence regarding the maintenance of the Building, Fornell's testimony that she had contracted and overseen work on the Building was admissible. Combined with Montilla's inconclusive testimony, the trial court's decision is not against the manifest weight of the evidence as each

alleged condition could have been created during the examination and maintenance activity. Further, it was certainly reasonable for the court to determine that each of these alleged conditions of the Building was watertight and not a danger or hazard.

The City's argument raises serious concerns to this court. In this case, the City claims that the testimony presented requires a finding of various violations to the building code and fines for each day the code was allegedly violated. Hypothetically, this would make it possible for the City to fine any building owner attempting to make exterior repairs to its building. This is especially problematic for owners of protected historic buildings as they must undertake extra measures that are often quite time-consuming. It is a grave concern in cases such as this where fines have been sought close to a million dollars, with only proof that maintenance activities have occurred, albeit slowly, on a building. The nature of the code as a form of strict liability has been admitted in prior cases; however, the City must prove up violations to a court. The trial court found that the City did not do so in this case. We do not find reason to overturn the trier of fact, who reviewed all evidence and observed the testimony of the witnesses while sitting in a court that specializes in these types of cases.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

Quinn, P.J. and Campbell, J., concur.