# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *City of McHenry v. Suvada*, 2011 IL App (2d) 100534

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF McHENRY, Plaintiff-Appellant, v. VERA ANN SUVADA, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2–10–0534 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's award of attorney fees to plaintiff city in an action arising from building code violations on defendant's property was affirmed, notwithstanding the fact that the city expended $27,000 in attorney fees and the trial court only awarded $1,500, since the attorneys began a litigation strategy before defendant was notified of a potential violation and before they had any indication of whether defendant would be cooperative, the city's inspector testified that defendant was cooperative, and the trial court found that the goal of bringing the property into compliance could have been accomplished without resorting to "aggressive litigation," but the mandatory fine was modified to reflect that the *per diem* fine commenced on the date of the first inspection when defendant stipulated that the property was in violation, not the date notice of the violations was formally issued to defendant. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 07–CH–1098; the Hon. Michael J. Caldwell, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Kevin A. Chrzanowski and Jennifer J. Gibson, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellant.

Melissa A. Wick, of Michling, Hofmann, Vinton, Plaza & Wick, P.C., of Woodstock, for appellee.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1        We publish this case for the purpose of bringing full circle our earlier, related opinion, *City of McHenry v. Suvada*, 396 Ill. App. 3d 971 (2009), and clarifying certain issues raised with respect to the trial court's latitude in determining whether an ordinance violation exists, the length of a mandatory fining period, and the City's ability to collect attorney fees.

¶ 2        On December 16, 2009, this court determined that defendant, Vera Ann Suvada, was subject to a mandatory fine for violating the City of McHenry's building code. *Id.* at 984. This court remanded for a determination of: (1) the number of days that Suvada's property was in violation; (2) the amount of the fine (restricted to the statutory range of $25 to $750 per day of violation); and (3) reasonable attorney fees incurred by the City in enforcing the building code. *Id.* at 988. On remand, the parties agreed that the trial court could make its determinations based entirely on the facts and evidence presented in the original trial.[1]

¶ 3        The trial court determined that Suvada's property was in violation for 84 days and fined Suvada $25 per day for a total fine of $2,100. As to attorney fees, the court found that, because Suvada had been cooperative, the City could have accomplished its goal of having the property brought into compliance without resort to "aggressive litigation." The court awarded the City attorney fees in the amount of $1,500, representing 10 hours of work at a rate of $150 per hour, even though the City had expended over $27,000 in attorney fees.

¶ 4        The City appeals, arguing that the trial court's finding that the property was in violation for "only" 84 days was against the manifest weight of the evidence and that its award of "only" $1,500 in attorney fees was an abuse of discretion. For the reasons that follow, we determine that the property was in violation for 121 days and that the total fine should

---

[1]It is for this reason that we are able to produce a relatively short opinion. We encourage reference to our original opinion, *Suvada*, 396 Ill. App. 3d 971, for a more detailed account of the background and evidence in this case.

therefore be $3,025; however, the court did not abuse its discretion in awarding "only" $1,500 in attorney fees. Accordingly, we affirm as modified.

¶ 5                                    A. Number of Days: Start Date

¶ 6        The City first argues that the trial court erred in finding that the property was in violation for "only" 84 days. The 84 days represented the date the City formally issued Suvada a notice of substandard and dangerous building conditions (August 15, 2007), to the date Suvada applied for a building permit (November 18, 2007). We will not disturb a trial court's finding of fact unless it is against the manifest weight of the evidence. *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542 (1998). To the extent that a trial court's judgment relies on the construction of a statute or ordinance, we review the construction *de novo. City of Chicago v. Old Colony Partners, L.P.,* 364 Ill. App. 3d 806, 812 (2006).

¶ 7        The City contends that the court erred in finding the *start* date to be August 15, 2007, because, at the original trial, Suvada stipulated that the property was in violation on July 9, 2007, the date the City first inspected the property. The City, citing *Old Colony*, 364 Ill. App. 3d at 818, asserts that notice is not required before the mandatory daily fines set forth in the City's penalty provision are imposed. Suvada does not respond to this argument.

¶ 8            The City's penalty provision states:

         "Any person who violates *** any of the provisions of [the building code] *** shall be punished by a fine of not less than $25.00 nor more than $750.00 and each day upon which such violation continues shall constitute a separate offense." McHenry Municipal Code § 7–30(a) (eff. Dec. 4, 1987).

¶ 9         Like the penalty provision in *Old Colony*, section 7–30(a) of the City's code mandates a fine when the property is in violation, and it does not provide an exception based on lack of notice. *Old Colony*, 364 Ill. App. 3d at 817-18 (noting that *other* provisions in the code, such as those pertaining to injunctions, *do* require notice and an opportunity to cure, and that, while those provisions help to establish a working relationship between a city and building owners, penalty provisions without notice requirements serve an equally valid purpose–to motivate owners to maintain their buildings at all times); see also *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10 (2001) (where the language of a provision is clear and unambiguous, it must be enforced as written, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the drafting body). Given that Suvada stipulated that the property was in violation beginning July 9, 2009, any later start date is against the manifest weight of the evidence.

¶ 10                                   B. Number of Days: End Date

¶ 11       The City also contends that the trial court erred in finding the *end* date to be November 18, 2007, the date that Suvada applied for a building permit to correct the violations and, presumably, the date by which tenants had vacated the property. As to the end date, the trial court explained, "Once the building permit was applied for and the construction began, this

was just another house under construction. It was vacant just like any other house under construction. *It was not in violation of the ordinance* because nobody was living there. There was absolutely no threat to the health, safety, or welfare of the community." (Emphasis added.)

¶ 12    The City argues that Suvada actually continued to be in violation until somewhere between August 25 and September 3, 2008, when the building was *fully repaired and ready for occupancy*. The City argues that *City of Chicago v. Cotton*, 356 Ill. App. 3d 1 (2005), and *Old Colony*, each involving a penalty provision similar to section 7–30(a) at issue here, support a finding that Suvada must be fined until the property is fully repaired and ready for occupancy. If Suvada were fined $25 for each of the 422 days from July 9, 2007, to September 3, 2008, her total fine would be $10,550.

¶ 13    In arguing that the property is in violation until it is fully repaired and certified for occupancy, the City fails to recognize the distinction between a flaw in the condition of the building and a violation (*i.e.*, not all flaws constitute violations). More critically, it overlooks the precise language used in the various building code provisions. See *Suvada*, 396 Ill. App. 3d at 974-75 (citing McHenry Municipal Code §§ 7–251(c), (d), (e), (i), (j) (eff. Dec. 4, 1987), and International Property Maintenance Code 2000 §§ 108.1, 108.2, 303.2, 304.2, 304.3, 604.3).

¶ 14    As to the various building code provisions, we note that, where the code at issue uses general terms and/or language that is open to interpretation, such as "dangerous and hazardous," it is within the discretion of the trial court to determine whether the state of the building should constitute a violation. *Suvada*, 396 Ill. App. 3d at 984 (citing *Old Colony*, 364 Ill. App. 3d at 815). Use of such broad phrases brings an ambiguity (or vagueness), which "grant[s] the fact finder latitude in deciding whether the condition of the building merits fines or injunctive relief," *i.e.*, in deciding whether a violation exists. *Old Colony*, 364 Ill. App. 3d at 814-15. Here, the code provisions at issue use general qualifying terms such as "dangerous," "unsafe," "hazard[ous]," and "fail[ure] to maintain." See *Suvada*, 396 Ill. App. 3d at 974-75 (further detailing the language of the code). Therefore, a trial court *may* well find, as it did here, that a building is no longer "dangerous" once its tenants have been removed or that the owner no longer "fail[s] to maintain" a certain aspect of the building's structure once he or she has taken a significant step toward repair and continues to repair the building in a diligent manner.

¶ 15    Although our analysis of the language in the building code requirements is dispositive, we address the City's argument that *Cotton* and *Old Colony* support a finding that section 7–30(a) mandates a fine until the property is fully repaired and ready for occupancy. The City's reliance on *Old Colony*, 364 Ill. App. 3d at 818, and *Cotton*, 356 Ill. App. 3d at 4-7, for the principle that "subsequent compliance" cannot mitigate a mandatory fine as prescribed by section 7–30(a), is misplaced. The term "subsequent compliance," as used in those cases, refers to compliance *after* the contested period. For instance, in *Cotton*, the defendant violated the building code for a period of 20 days when she failed to provide gas service to her tenants. *Cotton*, 356 Ill. App. 3d at 2. That she provided her tenants with gas service on day 21 did not vitiate her fine for days 1 through 20. *Id*. at 4-7. Indeed, in our first opinion, we rejected the notion that a defendant who violates the building code for a period,

-4-

yet *subsequently* complies prior to the hearing on the complaint, is no longer subject to *any* fine. *Suvada*, 396 Ill. App. 3d at 983. This is not a case where the court vitiated a fine for the period prior to the end date of the violation period.[2]

¶ 16                                C. Attorney Fees

¶ 17      Next, the City argues that the trial court erred in awarding the City "only" $1,500 in attorney fees. In awarding the fees, the trial court stated:

> "I went on record [in the original trial] saying I didn't think fees were necessary because of the overly aggressive attitude of the [City]. *** Nevertheless, they did file suit, they did appear in court, they did get a preliminary injunction and *** we did have a hearing in the case. *** [Suvada] was compliant and the court will allow fees in the amount of 10 hours at the rate of $150 per hour."

The trial court's award of attorney fees will not be disturbed by a reviewing court absent an abuse of discretion. *Mountbatten Surety Co. v. Szabo Contracting, Inc.*, 349 Ill. App. 3d 857, 873 (2004). A court abuses its discretion when no reasonable person would take its view. *Anest v. Audino*, 332 Ill. App. 3d 468, 479 (2002).

¶ 18      The City contends that it should have been awarded over $27,000 in attorney fees. The City notes that it incurred 53 hours of attorney fees, at a rate that varied between $140 and $270 per hour, in pursuing its action against Suvada. The City cites to section 11–31–1(a) of the Illinois Municipal Code, which provides:

> "The cost of the demolition, repair, enclosure, or removal incurred by the municipality *** including court costs, attorney's fees, and other costs *related to the enforcement of this Section*, is recoverable from the owner ***." (Emphasis added.) 65 ILCS 5/11–31–1(a) (West 2006) (paragraph 4).

As we noted in our prior opinion, the City chose to move forward with its complaint that Suvada's building was in need of repair under section 11–31–1 of the Illinois Municipal Code as opposed to section 11–31–2 because the former allows for the collection of attorney fees whereas the latter does not. *Suvada*, 396 Ill. App. 3d at 986. It is well established that a municipality seeking to recover attorney fees pursuant to section 11–31–1 has the burden

---

[2]We further note, again, that the language of the penalty provision states: "any person who violates [the building code] *** shall be punished by a fine of [between $25 and $750] and *each day upon which such violation continues* shall constitute a separate offense." (Emphasis added.) McHenry Municipal Code § 7–30(a) (eff. Dec. 4, 1987). Although the difference is subtle, the provision does not state that the violator will be fined until the problematic condition is *cured*; it states that the violator will be fined for each day that the violation *continues*. Like the terms in the building code that set forth what constitutes a violation, the word "continue" in the penalty provision gives the fact finder some latitude. Webster's Dictionary defines "continue" as "to allow or cause to remain (in a place or condition)." Webster's Third New International Dictionary 493 (1993). Therefore, the term "continue" enables a trial court in the appropriate instance to find that a defendant no longer "allow[s] [the condition] to remain" once he or she takes affirmative steps to repair the building and proceeds in a diligent manner.

of proving that the expenses incurred were reasonable. *Village of Franklin Park v. Aragon Management, Inc.*, 298 Ill. App. 3d 774, 778 (1998). In considering the reasonableness of the fees, a trial court must consider the attorney's skill and standing, the nature of the controversy, the novelty and difficulty of the questions at issue, the importance of the subject matter, the degree of responsibility in the management of the case, the time and labor required, the usual and customary charge in the community, and the benefits resulting to the client. *In re Marriage of Ransom*, 102 Ill. App. 3d 38, 41 (1981).

¶ 19     The City seems to accept Suvada's position that section 11–31–1 provides for attorney fees related only *to its enforcement*. 65 ILCS 5/11–31–1(a) (West 2006). The subject matter of section 11–31–1 pertains to a municipality's right to seek to "demolish, repair, or enclose[ ] dangerous and unsafe buildings or uncompleted and abandoned buildings within [its] territory." 65 ILCS 5/11–31–1(a) (West 2006). Section 11–31–1 does *not* contain a provision that sets forth applicable fines, and so it does not provide for attorney fees incurred to prepare for a trial on fines and fees,[3] which, as the City acknowledges, resulted here in at least $16,000 of its requested fees.

¶ 20     The City argues that the trial court considered factors outside of those set forth in *Ransom* when it stated that the City had pursued an "overly aggressive" litigation strategy. We disagree. Whether the City's litigation strategy was "overly aggressive" speaks to the reasonableness of its fees. Specifically, it speaks to whether the fees were necessary to obtain the resulting benefits to the client. *Ransom*, 102 Ill. App. 3d at 41. Here, the attorneys began a litigation strategy before they even sent notice of a potential violation to Suvada and before they had any indication of whether Suvada would be cooperative. The City's inspector testified that, throughout the inspection process, Suvada had at all times been cooperative. The trial court found that many of the attorneys' actions were not necessary to secure enforcement of the code, and, in light of the factors set forth above, these findings were reasonable.

¶ 21                                III. CONCLUSION

¶ 22     For the aforementioned reasons, the finding that the property was in violation for 84 days was against the manifest weight of the evidence; the property was actually in violation for 121 days, resulting in a fine of $3,025. We affirm the court's award of attorney fees in the amount of $1,500.

---

[3]Regarding attorney fees for work incurred in an attempt to collect fines and fees, the City points in its reply brief to section 1–8(b) of its code, which states that, "[i]n the event any charge or fee, including *** fines [and] penalties, *** found in any section of the [code] *that is due the City and is not paid*, the cost of collecting said fee and enforcing the ordinance shall be added to the fee." (Emphasis added.) McHenry Municipal Code § 1–8(b) (eff. Dec. 4, 1987). However, we have already held that that portion of section 1–8(b) does not apply here, because *Suvada never refused to pay a fine due. Suvada*, 396 Ill. App. 3d at 985. It was within the trial court's discretion to find that it would be unreasonable for Suvada to pay for the City's battle with the courts where Suvada was at all times compliant.

¶ 23        Affirmed as modified.